The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* TOWER & SONS ET AL. (No. 2824)[1]

[1] T. D. 42158.

United States Court of Customs Appeals, April 16, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Albert MacC. Barnes, jr.,* and *Joseph Schwartz* of counsel) for appellees.

[Oral argument March 15, 1927, by Mr. Lawrence and Mr. Barnes]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisements 11311–A, 11544–A, and 11606–A.

Certain merchandise was entered at the port of Niagara Falls, N. Y., and appraised by one Thomas M. Hennessy, whose authority to act in that capacity and whose action in the premises is challenged in this case.

The importer appealed to reappraisement.

On the trial before McClelland, Associate Justice of the United States Customs Court, sitting in reappraisement, the validity of the appraisement of the merchandise was challenged by the importer. It was there claimed that, while Mr. Hennessy had the authority to appraise merchandise under the tariff act of 1913, having been duly designated as acting appraiser by the collector, his authority as such officer ceased upon the enactment of the Tariff Act of 1922; and, as he had not been appointed appraiser by the President of the United States, and, as he had not been appointed acting appraiser by the Secretary of the Treasury at the time the merchandise was appraised by him, the appraisement was illegal and void. It was also claimed that, as there had been no valid appraisement, the trial justice had no authority to reappraise the merchandise. Evidence as to the value of the merchandise was introduced, however, by the parties.

The court held that, as Mr. Hennessy had not been legally appointed to the office of appraiser or acting appraiser, the appraisement was illegal and void, and that the court had no authority to reappraise the merchandise. The appeal was dismissed. Thereupon, the Government filed an application in the United States Customs Court for a review of the decision and judgment of the trial justice.

The court below held that, at the time of the appraisement of the merchandise Mr. Hennessy was a *de facto* officer, and that his appraisement of the merchandise was not illegal, but valid. Where-

upon, the court proceeded to consider the merits of the case upon the record made before Justice McClelland, and to reappraise the merchandise. It reached the conclusion that the appraisements made by the acting local appraiser were too high and reappraised the merchandise, holding that the entered values in reappraisement 11311–A were the correct dutiable values, and that in reappraisements 11544–A and 11606–A the merchandise having been entered under duress the values stated in the invoices were the dutiable values of the merchandise. Judgment was entered accordingly.

From this judgment the Government has appealed.

It is claimed by the Government that the court below having determined that Mr. Hennessy was a *de facto* officer, and as such legally qualified to appraise the merchandise, and as the trial justice had failed to determine the dutiable values of the merchandise the United States Customs Court was without authority, its jurisdiction being appellate and not original, to determine the dutiable values of the merchandise. It is claimed that the court below should have reversed the judgment of the associate justice, and remanded the case for findings of value.

It is contended by the appellees that Mr. Hennessy had not been legally appointed either as an appraiser or as an acting appraiser at the time the appraisements were made; that the appraisements made by him were illegal and void; that the associate justice had no authority to determine the values of the merchandise; and that his decision to that effect was sound; that, however, if it should be held that the original appraisement was legal, the judgment below should not be disturbed, because, it is argued, the values found by the court below are in accord with the evidence in the case.

It is conceded that Mr. Hennessy was a duly appointed and qualified appraising officer at the time the Tariff Act of 1922 went into effect—September 22, 1922. It is contended, however, that while the collector had authority under the tariff act of 1913 to designate an officer to act as an appraiser, he does not have that power under the Tariff Act of 1922. Our attention is called to subsection (i) of section 401, and subsection (e) of section 500 of the Tariff Act of 1922. They provide as follows:

SEC. 401. (i) APPRAISER.—The word "appraiser" means the person authorized by law, or by the Secretary of the Treasury, to appraise imported merchandise and to make a return of the value thereof.

SEC. 500. (e) The Secretary of the Treasury is authorized to designate an officer of the customs as acting appraiser at a port where there is no appraiser. Such acting appraiser shall take the oath, perform all the duties, and possess all the powers of an appraiser.

It appears from the record that, on October 3, 1922, the collector recommended to the Secretary of the Treasury that Mr. Hennessy

be designated acting appraiser as of September 22, 1922. This official communication was approved by the Secretary of the Treasury, November 15, 1922. On September 22, 1922, the Treasury Department published T. D. 39248, which reads as follows:

TREASURY DEPARTMENT, *September 22, 1922.*

*To Collectors of Customs:*

You are hereby directed to submit the nomination of an officer of your force for designation, under the provisions of section 500 (e) of the tariff act approved September 21, 1922, as acting appraiser at each port in your district where there is no appraiser.

Submit on Form 3021, in triplicate, the names of the persons to be designated under the above authority for the specific approval of the department. The appointments will be effective this date; an oath of office to be administered. The required oath forms will be furnished you.

W. G. PLATT, *Acting Assistant Secretary.*

It is evident that the Treasury Department attempted to make the appointment of acting appraisers effective as of September 22, 1922. It is also evident that it was impossible for the department to make proper appointments of all such officers at the precise moment the law went into effect. It was necessary, therefore, that some such method as that used in T. D. 39248 be employed.

The record discloses that Mr. Hennessy took the oath of office as acting appraiser on October 9, 1922. The merchandise was appraised by him on October 13, 1922, after the oath had been administered. Thus it will be observed that the collector, the Treasury Department, and Mr. Hennessy, all acted upon the supposition that the designation was effective as of September 22, 1922. Whether the appointment had been made legally effective prior to November 15, 1922, need not be determined, as it is evident that Mr. Hennessy was a *de facto* officer at the time the appraisements were made. He was claiming title to the office of acting appraiser under color of appointment, and was in possession and performing the duties of the office. His official acts are therefore valid. *Norton* v. *Shelby County*, 118 U. S. 425; *Ex parte Henry Ward*, 173 U. S. 452.

In the case of *Norton* v. *Shelby County, supra*, the Supreme Court said:

* * * The opinion of Chief Justice Butler is an elaborate and admirable statement of the law, with a review of the English and American cases, on the validity of the acts of *de facto* officers, however illegal the mode of their appointment. It criticises the language of some cases that the officer must act under color of authority conferred by a person having power, or *prima facie* power, to appoint or elect in the particular case; and it thus defines an officer *de facto:*

An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised:

First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like.

Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.

Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.

We conclude, therefore, that the appraisements made by Mr. Hennessy were legal.

Section 501 of the Tariff Act of 1922 provides as follows:

SEC. 501. REAPPRAISEMENT.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the Board of General Appraisers by the collector within sixty days after the date of the appraiser's report, or filed by the consignee, or his agent, with the collector within ten days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. No such appeal filed by the consignee, or his agent, shall be deemed valid, unless he has complied with all the provisions of this act relating to the entry and appraisement of such merchandise. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the Board of General Appraisers and shall be assigned to one of the general appraisers, who shall ascertain and return the value of the merchandise and shall give reasonable notice to the importer and to the person designated to represent the Government in such proceedings of the time and place of the hearing, at which the parties and their attorneys shall have an opportunity to introduce evidence and to hear and cross-examine the witnesses of the other party and to inspect all samples and all papers admitted or offered as evidence. In finding such value affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports, or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the

collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an act entitled "An act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911.

Legal appraisements having been made, and an appeal to reappraisement having been taken, it was the plain and mandatory duty of the associate justice of the United States Customs Court sitting in reappraisement to ascertain and return the value of the merchandise in the manner provided by law. This the associate justice failed to do. He dismissed the appeal on a jurisdictional ground. The Government filed an application in the United States Customs Court for a review of this decision. What was there for the court to review? Certainly not findings of value, as the trial justice had refused to make such findings.

The statute provides that when an application for review of a reappraisement decision is filed with the court below it "shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser" (trial justice) "and after argument on the part of either of them *shall affirm, reverse, or modify the decision of the general appraiser*" (trial justice) "or *remand* the case to the general appraiser" (trial justice) "for further proceedings, * * *." (Italics ours.) It is evident that in cases of this character the jurisdiction of the court below is appellate and not original. It has the power to review the findings of value returned by the trial justice and to affirm, reverse, or modify his decision; or it may remand the case for further proceedings. Its jurisdiction in reappraisement proceedings being appellate only, it has no authority to try the case *de novo. Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318.

In the case at bar the court proceeded to consider the evidence and to determine the dutiable value of the merchandise, although the judgment which it was called upon to review did not dispose of the case on the merits. The reviewing court having correctly decided that the appraisements were legal and that the trial court had jurisdiction to hear and to determine the issues presented by the parties, it should have reversed the judgment of the trial court and remanded the case for proceedings in conformity to law.

For the reason stated, the judgment is reversed and the cause remanded for proceedings consistent herewith.

*Reversed* and *remanded.*