UNITED STATES *v.* PORTO RICO COAL CO. (No. 3199)[1]

UNITED STATES *v.* PORTO RICO COAL CO. (No. 3218)

[1] T. D. 43716.

United States Court of Customs and Patent Appeals, November 25, 1929

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Geo. W. Dalzell* for appellee.

[Oral argument October 9, 1929, by Mr. Lawrence and Mr. Dalzell]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The steam tug *Berwind*, of 147 tons gross and 3½ tons net, 85 feet long, 21 feet of beam, and with 10 feet depth of hold, was built in Lytham, England, about the year 1921. In 1922 she was purchased by the Vera Cruz Coal Co., of Vera Cruz, Mexico, and was brought across the ocean, but whether under her own power or not does not appear. In 1925 she was removed to the harbor at Habana, Cuba, and was used there for two years in the towing of lighters. In March, 1926, she was transferred to the appellee, the Porto Rico Coal Co., and proceeded to San Juan, P. R., from Habana, Cuba, a distance of 1,000 miles, under her own power, where she has since been used in the harbor in docking and undocking ships of the United States, the Porto Rico Line, the Spanish Line, and the French Line, and for towing coal barges. She was documented while in Habana under the laws of Cuba, but not in San Juan or any other American port. She has a speed of 8 knots, has full towing equipment, quarters for her crew, and has always carried full salvage equipment until some part of the same was removed prior to her trip from Habana to San Juan. On June 3, 1927, William J. Kennerly, manager of appellee, filed a bill of sale for the *Berwind* and entered her in a consumption entry in the collector's office at San Juan, which he states was done in pursuance to the advice of the deputy collector there.

Thereupon, the local appraiser at San Juan proceeded to appraise the *Berwind* as imported goods, wares, and merchandise, and the appellee appealed to reappraisement. On this appeal, Chief Justice Fischer sustained a motion made by the appellant there to dismiss the proceedings on the grounds that the *Berwind* was not merchandise and not subject to appraisement or within the jurisdiction of the court. On petition for review, the Customs Court, First Division, reversed and remanded the cause, directing the single justice to enter judgment holding the appraisement to be null and void. This was thereafter done by the single justice, affirmed on review by the first division, and the Government has brought the matter here. Thinking it

necessary to protect the Government's interest, appeals were taken from both the original and the final judgments of the first division and are known here as suits Nos. 3199 and 3218.

The first question presented for our consideration is: Was the *Berwind*, when she entered the customs jurisdiction at San Juan, an imported article, and, as such, subject to appraisement and the payment of import duty under the provisions of the Tariff Act of 1922?

The answer to this question lies in a determination whether the *Berwind*, at the time she entered our customs jurisdiction, was a vessel, within the meaning of section 3, Revised Statutes:

Sec. 3. The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as means of transportation on water.

We had this matter under consideration in the case of the old cruiser *Niobe* in *Hitner Bros. Co.* v. *United States*, 13 Ct. Cust. Appls. 216, T. D. 41175. The *Niobe* was dismantled, her machinery out of commission and incapable of performing its functions, and she was entirely unable to perform any service such as a vessel ordinarily performs. We said, in part:

From these authorities some general conclusions may be deduced. In order to come within the definition of a "vessel" as fixed by section 3, Revised Statutes, the service upon which the thing in question can engage must be a maritime service. It must have some relation to commerce or navigation, or at least some connection with a vessel employed in trade. It must be engaged in, or in some sense related to, commerce and navigation. The fact that the structure has the shape of a vessel, or has been once used as one, or could by proper appliances be again used as such, can not affect the question. The test is the actual status of the structure as being fairly engaged in, or suitable for, commerce or navigation and as a means of transportation on water.

The *Berwind* comes clearly within the construction thus announced and is a vessel, within the meaning of the law.

Is such a vessel subject to import duties? Certain means of water transportation, coming within the definition of "vessels," must be conceded to be subject to such import duties. These are such as have been specifically named in the tariff laws. Of such a kind are motor boats. Par. 370, Tariff Act of 1922. But as to all vessels not so specified, it has never been the policy of this country to subject them to payment of customs duties. That principle was well settled in the case of the *Conqueror*, 49 Fed. 99, affirmed in 166 U. S. 110.

In the *Conqueror* case, a steam, ocean-going yacht, foreign built, and used for pleasure purposes, was entered at the port of New York as a vessel. The collector seized her and attempted to classify her as dutiable merchandise. Libel was brought to recover possession, on the grounds the *Conqueror* was not subject to customs duties. The District Court entered a decree for restitution, with an assessment of damages, which decree was affirmed by the Circuit Court of

Appeals. The Supreme Court affirmed the judgment. In its opinion filed in the case, the Supreme Court said, in part:

But the decisive objection to the taxability of vessels as imports is found in the fact that, from the foundation of the Government, vessels have been treated as *sui generis*, and subject to an entirely different set of laws and regulations from those applied to imported articles. By the very first act passed by Congress in 1789, subsequent to an act for administering oaths to its own members, a duty was laid upon "goods, wares, and merchandise," imported into the United States, in which no mention whatever is made of ships or vessels; but by the next act, entitled "An act imposing duties on tonnage," a duty was imposed "on all ships or vessels entered in the United States" at the rate of six cents per ton upon all such as were built within the United States, and belonged to American citizens; of thirty cents per ton upon all such as should thereafter be built within the United States, belonging to subjects of foreign powers, and of fifty cents per ton upon all other ships or vessels, with a proviso that no American ship or vessel employed in the coasting trade or fisheries should pay tonnage more than once in any year This distinction between "goods, wares, and merchandise," and "ships or vessels," has been maintained ever since, although the amount of such duties has been repeatedly and sometimes radically changed. At the time of the arrival of the *Conqueror*, tonnage duties were imposed undtr the act of June 26, 1884, as amended by section eleven of the act of June 19, 1886, with a proviso that the President of the United States might suspend the collection of them in certain specified cases. In addition thereto there was, by Rev. Stat. §4225, a duty of fifty cents per ton, denominated "light money," levied and collected on all vessels not of the United States which might enter the ports of the United States; although, by §4226, there was a provision that this tax should not be imposed upon any unregistered vessel "owned by citizens of the United States, and carrying a sea letter, or other regular document, issued from a customhouse of the United States, proving the vessel to be American property." It would seem that, under this section and in virtue of the collector's certificate to her bill of sale, stating that her owner was an American citizen, the *Conqueror* would not thereafter be subject to the payment of light money. *The Miranda*, 1 U. S. App. 228.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In view of the elaborate opinion of the district judge upon this branch of the case it is unnecessary to extend this discussion further. We think that the liability of ships and vessels to tonnage dues and to light money, except where a certain class of vessels is specially exempted, shows that it was not the intention of Congress to treat them as dutiable articles. So far as the court below awarded restitution of the vessel to the libellant, its decree was right and will be affirmed.

But it is argued by the Government that because the *Berwind* is undocumented, that is, neither a registered nor enrolled vessel, under the provisions of sections 4131–4196, Revised Statutes, as amended, and Chapter II, Customs Regulations of 1923, she may evade the payment of both tonnage and import duties—that, not having paid tonnage duties, she should be considered as dutiable merchandise. We are not called upon to decide whether the *Berwind* is or is not subject to tonnage duties as provided by the statutes. Ch. 3, secs. 4219–4227, R. S.; act of June 26, 1884, 23 Stat. 57; act of Feb. 5, 1897, 29 Stat. 511; U. S. Code, title 46, ch. 4, secs. 121–135, pp. 1467–1469. If she is not so subject, it is because of the exemptions provided by

the law. The fact that she has a measurement of less than 5 tons net, and hence is not to be documented under the Customs Regulations above cited, does not affect her liability to tonnage duties; such liability is governed entirely by the statutory enactments providing for the collection of such duties. It is sufficient to say that she is of the class of property that, from our earliest national period, has been distinguished from imported goods, wares, and merchandise, and held not to be subjected to customs duties unless the statute otherwise expressly so provides.

It is contended by counsel for the Government, and it seems to have been the opinion of the Treasury Department, that a certain expression in the opinion in the *Conqueror* case justifies the view that undocumented vessels are subject to customs duties. That expression is as follows:

We do not undertake to say that the same rule applies to canoes, small boats, launches and other undocumented vessels, which are not used, or are not capable of being used, as a means of transportation on water, as the word "vessel" is defined in Rev. Stat. § 3. While these vessels have a limited capacity for transportation, they are ordinarily used for purposes of pleasure, and are not considered of sufficient importance to require them to be entered at the customs house, or to be entitled to the special protection of the flag. They are treated like other similar vehicles used upon land, and there are reasons for saying that these boats, which do not ordinarily come of themselves into the country, but are imported or brought upon the decks of other vessels, are mere manufactures or other "articles," and are within the description of the tariff acts.

We can not agree that the quoted language is subject to such interpretation. This is but a statement that a certain type of small, undocumented vessel may be subject to customs duties as merchandise, under certain circumstances, but can not be treated as a statement that whether a vessel is documented or not shall be the test as to such dutiability.

It is contended by the Government that under the authority of *In re Fassett*, 142 U. S. 479, the appellee in this case is estopped by his entry of the *Berwind* from now claiming that she is not a dutiable article. In the case cited, Mr. Justice Blatchford, delivering the opinion of the court, said:

Under the Customs Administrative Act, the libellant, in order to have the benefit of proceedings thereunder, must concede that the vessel is imported merchandise, which is the very question put in contention under the libel, and must make entry of her as imported merchandise, with an invoice and a consular certificate to that effect, and thus estop himself from maintaining the fact which he alleges in his libel, that she is not imported merchandise.

Arguing with this statement as a basis, counsel contend the same rule should be applicable here.

Assuming, without holding, that appellee made a voluntary entry of the *Berwind*, we believe it does not follow that thereupon he was estopped from filing protest, or from raising the point in a reappraise-

ment proceeding in a proper way, that she was not dutiable merchandise. We come to this conclusion from a consideration of the legislative and judicial history, since the rendition of the opinion in the *Fassett* case, *supra*. In this matter the research of counsel has aided us very materially.

*In re Fassett* was decided under the Customs Administrative Act of June 10, 1890. Paragraph 14 of that act provided that the decision of the collector as to the rate and amount of duties chargeable upon "imported merchandise * * * and as to all fees and exactions of whatever character (except duties on tonnage)," should be final and conclusive, unless appealed from by the importer. However, subsequent acts of Congress, apparently having in mind this conclusion, greatly broadened the scope of the decisions of the collector, which might be made and might be questioned by the person affected, by appeal. The Tariff Act of October 3, 1913, Section III, subsection N, permitted decisions of the collector and appeals therefrom, "as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall be assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage)."

The Tariff Act of 1922, section 514, further enlarged this language until it now reads:

SEC. 514. PROTEST.—All decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his liquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry, * * *

We had occasion to note some of these changes in the substantive law in *United States* v. *Mandel Bros.*, 7 Ct. Cust. Appls. 476, T. D. 37051, which case involved mail importations, and was under the Tariff Act of October 3, 1913. The argument was made there that the Board of General Appraisers did not have jurisdiction of mail importations, upon the assumption that no entry was required thereof by law. The court, speaking through De Vries, J., said, in part:

Without expressing opinion upon that contention, it is here sufficient to point out that in this particular the jurisdiction of the board has been materially changed by the Tariff Act of 1913, paragraph N of section 3, by addition of the words "or upon merchandise on which duty shall have been assessed" to the language of the Tariff Act of 1909, subsection 14 of section 28. Italicizing said newly added words, the contrasted provisions may be more readily shown, the whole as hereinbefore quoted presenting the presently effective law. Undoubtedly this amendment was prompted by the decisions of the Supreme Court of the United States

in "the Insular Cases," *De Lima* v. *Bidwell*, (182 U. S. 1) and *Goetze* v. *United States* (182 U. S. 221) holding that the board had not jurisdiction where the collector assessed duty upon goods *not imported*. By this provision jurisdiction of the board is extended to all decisions of collectors of customs as to the rate and amount of duties, whether or not imported, and, of course, whether or not legal entry is therefor provided. It is any and every *decision* of a collector as to the rate and amount of duties, etc., that may be protested and reviewed, and not only such a decision as to imported or legally entered merchandise or as to goods for which a certain entry is by statute provided. Wherefore, this appeal being from a decision of a collector of customs as to the proper rate and amount of import duty assessed thereupon, jurisdiction of the board attaches without further essential qualification to confer that jurisdiction.

We are of opinion the *Fassett* case was decided in view of the particular statute in force at that time, and can not be held to be applicable now. To hold that an importer is bound and estopped by each statement he makes in his entry, under present laws, would not only greatly interfere with and cripple the commerce of the country, but, in our judgment, is far from the intent of Congress as expressed in the various acts which we have above cited and referred to.

It has been suggested that the question of the dutiability of the *Berwind* can not be raised in a reappraisement proceeding; that the only function of the appraiser and the single justice was to appraise the goods and of the appellate division of the Customs Court to review such appraisement.

It would appear that such contention loses sight of the former conclusions of this court on that point. In *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944, this court, speaking through Hatfield, J., called attention to the fact that under sections 486, 499, 500, and 501 of the Tariff Act of 1922, in reappraisement matters, the single general appraiser and the Board of General Appraisers (now the single justice and the Customs Court) both exercise purely judicial functions. In *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, we further developed this rule and held:

If, then, the functions of the single general appraiser and the Board of General Appraisers in reappraisement matters are purely judicial, the ordinary rules applicable to other courts and judicial proceedings will apply except where modified or amended by the statutory law here applicable.

In *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. 166, T. D. 43474, a local appraiser, claiming to act under the authority of an alleged antidumping order said to be issued under section 201 (a) of the Antidumping Act, 1921, estimated and reported in addition to the usual duties, certain antidumping duties. An appeal to reappraisement and review by the Customs Court followed. When the case came to this court, we said, *inter alia:*

· If this be true, then any question affecting the appraisement, either as to its amount or legality, is properly before the Customs Court on review. If such matters are not so cognizable by the Customs Court, they could not be considered here on appeal, for this court reviews the judgment of the reappraising court on questions of law only. (Sec. 501, *supra*.) Every reasonable view of the matter supports the conclusion that if there be, in fact, no valid appraisement, the Customs Court may so find, on review. Without attempting to express any view as to whether such a question may be raised on a protest to classification, it is sufficient to say that such question need not wait for protest, but may be raised upon reappraisement.

In many cases, while the exact question here raised has not been involved, the Customs Court, on review of reappraisement, has passed upon the validity of the appraisement, and we have reviewed that court's judgments on appeal. Among these are *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 299, T. D. 40313, and *United States* v. *Tower & Sons*, 15 Ct. Cust. Appls. 83, T. D. 42158.

It is evident from these authorities that the question of the validity of an appraisement may be raised and disposed of in a reappraisement proceeding before either the single justice, the appellate division, or here. And this comports with reason. It certainly was not the intent of the lawmakers that a local appraiser might appraise goods not subject, under the laws, to appraisement, and that because he has done so the single justice, the appellate division, and this court must go through the tedious and expensive round of appraising and review and then send the matter back to the collector for classification before a question can be raised as to whether it was lawful to appraise it in the first instance. This would be a harsh rule and one not to be favored.

When the reappraisement came before the single justice, it was *de novo*. He had nothing to do with the appraisement made by the local appraiser. It was his function to appraise, as an original proposition, or, if he found the goods not legally subject to appraisement, to so find and hold.

The single justice, in the first instance, finding the *Berwind* to be not subject to appraisement, *dismissed the appeal to reappraisement*. This was erroneous. As this court was acting *de novo*, its judgment should have been that the *Berwind* was not legally subject to appraisement. In addition, the judgment of the appellate division, directing the single justice to "hold that the appraisement of this vessel, by the appraiser at San Juan, Porto Rico, is void and should be set aside," is, technically, erroneous for the same reason. However, we are of opinion that the final judgment entered in the case, as directed by said appellate division, may be construed, without violence to either the parties or the purpose and intent of the law, as a judgment that the *Berwind* is not legally liable to appraisement, and we so construe it.

The judgment of the Customs Court is therefore *affirmed* in both cases.

DISSENTING OPINION

LENROOT, Judge: It is with regret that I feel compelled to dissent from the conclusion reached by the majority of the court in this case. If the Customs Court had jurisdiction in an appeal for reappraisement to determine the question of whether the tugboat in question was imported merchandise, bringing it within the customs laws for purposes of duty, I should be in hearty accord with the conclusion of this court upon that question.

I am, however, unable to agree that this question can be raised in an appeal for reappraisement by challenging the jurisdiction of the Customs Court or the jurisdiction of the local appraiser. I readily concede that it is very unfortunate if this appeal can not determine whether the tugboat in question was importable merchandise, but we should apply the law as we find it, and this court has no power to create a jurisdiction which does not exist by law for the purpose of expediting the determination of a controversy.

Preliminary to a discussion of the jurisdiction of the Customs Court to determine in an appeal for reappraisement the question of whether merchandise is imported within the meaning of the customs laws, I would observe that I had supposed that the law was well settled that when a court finds lack of jurisdiction over the subject matter its only power is to dismiss the proceeding. As early as the case of *Ex Parte McCardle*, 7 Wall. 506, it was decided that a court can not proceed at all in any cause without jurisdiction, but must announce the fact and dismiss the cause. This I believe has been the invariable rule in all courts, Federal and State, and if there be lack of jurisdiction in the Customs Court it is the rule that should be followed here.

Furthermore, the Customs Court, appellate term, first division, which rendered the judgments from which these appeals are taken, expressly held that it did have jurisdiction to hear the case, and proceeded to decide it, not upon the theory that it was without jurisdiction, *but that it did have jurisdiction*, and it held the original appraisement by the local appraiser of the Treasury Department void. Unless it did have jurisdiction to determine the merits of that controversy, that is, the question of whether the tugboat in question was dutiable merchandise, there was no ground upon which it could hold the original appraisement void.

It is my view that the Customs Court had jurisdiction to find the value of the tugboat in question, but that it did not have jurisdiction, sitting as a reappraisement court, to determine that the tugboat was not dutiable merchandise within the meaning of the customs laws.

It is important in this connection to consider the jurisdiction of the Customs Court conferred by statute, for of course it has no jurisdiction other than that so conferred.

The Customs Court sits in two capacities: (1) As an appraisement court acting upon appeals from local appraisers; and (2) as a court for hearing and deciding protests against decisions of collectors. The statute provides different rules of procedure for the court in these two capacities. As an appraisement court, section 501 of the Tariff Act of 1922 provides that every appeal from an appraiser shall be transmitted to the Customs Court and shall be assigned to one of the judges of the court *"who shall ascertain and return the value of the merchandise."* He is given no other powers. If dissatisfied with his decision, either of the parties may secure a review of such decision by a division of the Customs Court, which shall consider the case upon the samples and record made before the single justice, and the division, sitting in this appellate capacity, shall affirm, reverse, or modify his decision, or remand the case for further proceedings. Sitting as a court for hearing and deciding protests against decisions of collectors, a division of the Customs Court, consisting of three judges, must act, two of whom must concur in the decision. Acting in this capacity, it sits as a court of original jurisdiction, while when the division sits as a court of reappraisement it is an appellate court only.

It seems clear that the jurisdiction of the Customs Court must be strictly confined to the capacity in which it sits. Any jurisdiction which it possesses over a cause, sitting in one capacity, can not be exercised by it, sitting in another capacity, unless specially conferred.

These observations bring us directly to the inquiry of how the question of whether the tugboat was dutiable merchandise comes before either the local appraiser or the Customs Court. It must be admitted that nowhere is the determination of that question committed by statute to either the local appraiser or to the Customs Court in appraisement proceedings, and before either the local appraiser or the Customs Court can determine that question some power must have been delegated to them so to do.

I think it must be conceded that it is the duty of the local appraiser to appraise such property as the collector may order him to appraise. If the collector decides that certain property is merchandise subject to appraisal, the appraiser must accept his decision and proceed to appraise it. If the collector is in error in ordering its appraisement, because it is not in fact dutiable merchandise, it may be a finding which may later result in a *decision* as to the rate and amount of duty chargeable, or an *exaction* which under section 514 may be protested and brought before the Customs Court, sitting for hearing and deciding protests against *decisions* of the collector, but I can not

conceive how a *decision* of the collector on that question can be reviewed in an appraisement proceeding.

The brief of appellee in this case treats the case as if there had been an exaction by the collector, thus giving jurisdiction to the Customs Court to determine whether the tugboat was imported merchandise. But there has been no exaction by the collector, and if there had been, the Customs Court, sitting in reappraisement, could have no jurisdiction to review it. That could only be done by the division hearing and deciding protests made pursuant to the provisions of section 514.

I fear that the majority of this court, and the court below, have not fully considered the dual capacity in which the Customs Court acts. I think it is well settled that where a court attempts to execute a power not inherent, but specially given by statute, to do a particular thing in a particular way, it can not exercise any power except in the mode prescribed by the statute. *Thatcher* v. *Powell*, 6 Wheat. 119; *United States* v. *Knight's Administrator*, 1 Black. 488; *East Tennessee, Virginia & Georgia R. R. Co.* v. *Southern Telegraph Co.*, 112 U. S. 306; *Hart* v. *Gray*, 6 Fed. Cas. 152; *Shelby* v. *Bacon et al.*, 10 How. 69.

In the case of *De Lima* v. *Bidwell*, 182 U. S. 1, the court held that the Board of General Appraisers (now the Customs Court) had no jurisdiction where the collector assessed duty on goods not imported. The majority opinion in the case at bar impliedly admits that were the statutory law to-day the same as the law under which *In re Fassett*, 142 U. S. 479, and *De Lima* v. *Bidwell, supra*, were decided, the Customs Court would have no jurisdiction to determine whether the tugboat in question was imported merchandise within the meaning of the customs laws, but points out that the statutory law governing the jurisdiction of the Customs Court (formerly the Board of General Appraisers) has been materially modified since that time by enlarging such jurisdiction. The opinion points out the modifications which, I assume, are regarded as justifying its holding that the Customs Court, sitting in reappraisement, now has jurisdiction to decide the question of the importability of merchandise; but I submit that none of the modifications so pointed out affect in the least degree the jurisdiction of the Customs Court sitting in reappraisement. One modification emphasized in the majority opinion is the addition of the words "or upon merchandise on which duty shall have been assessed," thus giving the court jurisdiction over any goods on which duties have been assessed, whether imported or not. But in this case there has been no duty assessed, so clearly this language does not enlarge the jurisdiction of the court so far as the case at bar is concerned.

The majority opinion quotes with approval an opinion of this court in the case of *United States* v. *Mandel Bros.*, 7 Ct. Cust. Appls. 476, T. D. 37051. It was there said:

The whole argument urged in support of the claim that the board did not have jurisdiction of mail importations was and is based upon the asserted assumption that no entry, such as is required under the customs administrative act, is by law *required* as to such importations, and that such entry is a prescribed condition to the right of protest and appeal thereunder. Without expressing opinion upon that contention, it is here sufficient to point out that in this particular the jurisdiction of the board has been materially changed by the Tariff Act of 1913, paragraph N of section 3, by addition of the words "or upon merchandise on which duty shall have been assessed" to the language of the tariff act of 1909, subsection 14 of section 28. Italicizing said newly added words, the contrasted provisions may be more readily shown, the whole as hereinbefore quoted presenting the presently effective law. Undoubtedly this amendment was prompted by the decisions of the Supreme Court of the United States in "the Insular Cases," *De Lima* v. *Bidwel*, 182 U. S. 1, and *Goetze* v. *United States*, 182 U. S. 221, holding that the board had not jurisdiction where the collector assessed duty upon goods *not imported*. By this provision jurisdiction of the board is extended to all decisions of collectors of customs as to the rate and amount of duties, whether or not imported, and, of course, whether or not legal entry is therefor provided. It is any and every *decision* of a collector as to the rate and amount of duties, etc., that may be protested and reviewed, and not only such a decision as to imported or legally entered merchandise or as to goods for which a certain entry is by statute provided. Wherefore, this appeal being from a decision of a collector of customs as to the proper rate and amount of import duty assessed thereupon, jurisdiction of the board attaches without further essential qualification to confer that jurisdiction.

Here again is, without question, a correct statement of the law, but it has no application to this case for it relates only to jurisdiction of the Customs Court in protest cases.

The majority opinion further quotes section 514 of the Tariff Act of 1922 for the purpose of showing how the jurisdiction of the Customs Court has been enlarged since the decision in *In re Fassett*, and *De Lima* v. *Bidwell*, *supra*, all of which is true, but here again there is no application to the case at bar for it clearly appears that such enlarged jurisdiction extends only to the Customs Court when sitting in protest cases. This is not a protest case; had it been, I should have agreed with my brethren on the merits of the controversy.

The majority opinion points out that under the Tariff Act of 1922, in reappraisement matters, the single general appraiser and the Board of General Appraisers (now the single justice and the Customs Court) both exercise purely judicial functions, and the case of *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, is quoted from as follows:

If, then, the functions of the single general appraiser and the Board of General Appraisers in reappraisement matters are purely judicial, the ordinary rules applicable to other courts and judicial proceedings will apply except where modified or amended by the statutory law here applicable.

I am unable to understand how the language quoted has any application to the case at bar. Surely the majority of this court do not hold that because the functions of the single justice and the Customs Court are judicial they have by virtue of that fact any jurisdiction not conferred by statute. I submit that the jurisdiction of that court, a special court, must be found within the four corners of the statute creating it and laws amendatory thereof.

The càse of *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. 166, T. D. 43474, is cited in the majority opinion in support of the proposition that in a reappraisement proceeding the dutiability of the tugboat in question may be raised. But that case does not in my judgment have any application to the question here involved. That was a case arising under the Antidumping Act of 1921. Under that act, upon the Secretary of the Treasury making certain orders, specific duties were imposed upon appraisers as to finding certain facts. Section 209 of that act, imposing such duties, reads as follows:

#### DUTIES OF APPRAISERS

In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

By section 210 special jurisdiction was conferred upon the general appraisers and Board of General Appraisers, now the Customs Court, to review the acts of appraisers and collectors, acting pursuant to the provisions of the Antidumping Act. That section reads as follows:

#### APPEALS AND PROTESTS

For the purposes of this title the determination of the appraiser or person acting as appraiser as to the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and the action of the collector in assessing special dumping duty, shall have the same force and effect and be subject to the same right of appeal and protest, under the same conditions and subject to the same limitations and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law.

In the case of *United States* v. *Central Vermont Railway Co.*, *supra*, it appears from the record in the case, that the appraiser, in addition to finding the value of the merchandise there involved, expressly found, and it is so stated in his appraisement, that a certain order

of the Secretary of the Treasury, to wit, T. D. 39220, applied to the merchandise there in question, and therefore he proceeded to find the facts, in addition to foreign market value, required by section 209, *supra*. The question decided by the court, therefore, was not a question of the validity of an appraisement, under Title IV of the Tariff Act of 1922, which is involved in the case at bar, but the validity of certain acts performed by the appraiser under the Antidumping Act of 1921, all of which were dependent upon the validity of an order of the Secretary of the Treasury, which the appraiser had expressly found to apply to the merchandise there involved.

Other cases are cited in the opinion in the *Central Vermont Railway* case which likwise have no application to the case at bar, for the reason that in one the constitutionality of the act under which the appraiser proceeded was raised, and in the other the question involved was as to whether the appraiser had been legally appointed.

Again, attention is called to the fact that the majority opinion does not hold that the tugboat in question was not merchandise, as that word is defined in section 401 of the Tariff Act of 1922, but only that it was not dutiable merchandise.

Section 488 of the Tariff Act of 1922 provides that "The collector within whose district any merchandise is entered shall cause such merchandise to be appraised."

Section 401 defines the word "merchandise" as follows: "The word 'merchandise' means goods, wares, and chattels of every description and includes merchandise, the importation of which is prohibited." It is to be noted that the direction to the collector to cause appraisement is not limited to dutiable merchandise, or importable merchandise, but to all merchandise which is entered, and that, under section 401, means "goods  *  *  *  of every description."

The majority opinion states:

It certainly was not the intent of the lawmakers that a local appraiser might appraise goods not subject, under the laws, to appraisement,  *  *  *

And again:

When the reappraisement came before the single justice, it was *de novo*. He had nothing to do with the appraisement made by the local appraiser. It was his function to appraise, as an original proposition, or, if he found the *goods* not legally subject to appraisement, to so find and hold. [Last italics mine.]

It seems to me that the majority of the court have fallen into the error of assuming that there can be any *goods* entered at the customhouse that are not subject to appraisement. The statute is all-inclusive and I find no authority for reading into it any exception of goods that are not dutiable or not importable.

I am therefore of the opinion, not only that the question of the dutiability of the tugboat *Berwind* can not be raised in a reappraisement proceeding, but that when entered the law expressly required it to be appraised, as was done in the case at bar.

The question of dutiability because not provided for in the customs laws has nothing to do with the question of appraisement.

Finally, I would observe that the tugboat in question was entered by appellee at the customhouse at a value of $10,000. The appraiser advanced the value to $30,000. The appeal for reappraisement, signed by appellee, and appearing in the record, is as follows:

As we consider the appraisement made by the United States appraiser too high on one (1) tugboat called the *Berwind* imported on its own bottom from Habana, Cuba, we have to request that the same may be reappraised, pursuant to the law, with as little delay as your convenience will permit.

The notice of appearance refers to appellee as "importer." The waiver of right to have reappraisement at port of entry, signed by appellee, reads as follows:

I hereby request that the importation of one (1) tugboat called the *Berwind* on its own bottom, entry No. 3283, June 3, 1927, be reappraised at the office of the Board of United States General Appraisers, 641 Washington Street, New York City, and waive my right to have the reappraisement held at the port of entry, and hereby stipulate that the result of the reappraisement shall not be contested on account of the absence of the merchandise from the place of reappraisement.

It must be admitted, I think, that had the appellee chosen to continue to regard this tugboat as merchandise, the collector would, on the entry made, properly have assessed it for duty. The dissatisfaction expressed by the appellee was that the appraisement was too high. Therefore, so far as reappraisement is concerned, appellee is now estopped from claiming that the tugboat was not subject to appraisement.

The statute points out the way by which appellee may raise the question of whether the tugboat was imported merchandise. If the collector, when it becomes his duty to classify and assess the property, shall do so in a manner not satisfactory to appellee, it may invoke the jurisdiction of the Customs Court in the way the law provides by protest, but for this court to permit it to raise the question in an appraisement proceeding would, in my opinion, constitute judicial legislation and not judicial interpretation of the law.

In my opinion the judgment should be *reversed* and the cause *remanded* for proper proceedings to determine the value of the tugboat in question.