**ARGOSY LIMITED, Appellant,**

v.

**Franklin HENNIGAN, individually and as Acting District Director of Customs, Appellee.**

No. 25122.

United States Court of Appeals
Fifth Circuit.

Nov. 5, 1968.

Marshall J. Langer, Miami, Fla., for appellant.

Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., Alan S. Rosenthal, Howard J. Kashner, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

The controversy here under review turns on the parametrics of federal jurisdiction within the federal system itself. We are asked to determine whether or not this action was properly dismissed by the district court below for want of subject-matter jurisdiction, and whether or not such dismissal was correctly grounded on a determination that the complaint alleged matters within the exclusive domain of the Customs Court.

On May 4, 1967, Argosy Limited (Argosy), a corporation duly incorporated under the laws of the Bahama Islands, received a notice from the District Director of Customs demanding that Argosy file a dutiable consumption entry on its yacht, the *Fountainbleau II*, then located in the Port of Miami. The notice informed Argosy that unless such an entry were promptly filed, seizure of the yacht under authority of the customs laws would follow shortly. In order to enjoin the proposed seizure, Argosy filed this suit. It named Frank Hennigan as defendant both individually and in his official capacity as District Director of Customs.

In its complaint, Argosy alleged that the *Fountainbleau II* was exempt from assessment as a dutiable import under the Tariff Act of 1930, 19 U.S.C.A. § 1202 et seq. Argosy claimed that the yacht was neither an import within the true intent and meaning of the customs laws [1] nor an article covered by an ap-

1. 19 U.S.C.A. § 1202. Revised Tariff Schedules

1. *Tariff Treatment of Imported Articles.* All articles imported into the customs territory of the United States from outside thereof are subject to duty or exempt therefrom as prescribed in general headnote 3.

propriate tariff schedule. Item 696.10 [2] of the Tariff Schedules of the United States was claimed by Argosy to be inapplicable because the *Fountainbleau II* was available neither for sale or charter, nor for purposes of being used as a pleasure boat in United States territorial waters, nor for use in trade or commerce. The yacht had been brought to Miami, according to Argosy, for the sole purpose of undergoing major structural modifications, and was not even owned by a resident of the United States. For the Customs Director to seize such a yacht, claimed Argosy, when it was not an import, or if an import was not covered by Item 696.10, would be to commit a demonstrably tortious act. Argosy requested an injunction on the grounds that such an act would inflict irreparable injury.

■ On May 10, 1967, one day after Argosy filed its complaint, Hennigan took physical custody of plaintiff's yacht.

On May 12, 1967, the parties stipulated that Argosy could without prejudice to the continuation of its district court action file under protest a dutiable consumption entry supported by a normal consumption entry bond for the purpose of securing the yacht's release. On his part, the District Director agreed to suspend appraisement and liquidation of the consumption entry until the district court determined its jurisdiction of the subject matter, or until November 30, 1967, whichever occurred first. On June 26, 1967, the district court dismissed plaintiff's action for want of subject-matter jurisdiction. We are in accord and affirm.

The district court's dismissal of Argosy's action rested upon the mandate of 28 U.S.C.A. § 1340:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue

2. 19 U.S.C.A. § 1202. Revised Tariff Schedules:

| Item | Articles | Rates of Duty | |
|---|---|---|---|
| | | 1 | 2 |
| | Subpart D. Pleasure Boats | | |

\* \* \* \* \* \* \*

*Subpart D headnote:*

1. This subpart does not cover—
    (i) yachts or pleasure boats provided for in items 696.05–.10 if in use or intended to be used in trade or commerce, or if brought into the United States by non-residents thereof for their own use in pleasure cruising; or
    (ii) vessels which are not yachts or pleasure boats (see general headnote 5(e)).

Yachts or pleasure boats, regardless of length or tonnage, whether motor, sail or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power; and parts thereof:

Yachts or pleasure boats:

| | | | |
|---|---|---|---|
| 696.05 | Valued not over $15,000 each .......... | 4% ad val. | 30% ad val. |
| 696.10 | Valued over $15,000 each .............. | 10% ad val. | 30% ad val. |

\* \* \* \* \* \* \* \* \* \*

from imports or tonnage *except matters within the jurisdiction of the Customs Court."* (Emphasis added.) The Customs Court is given exclusive jurisdiction over customs matters by 28 U.S.C.A. § 1583:

"The Customs Court shall have exclusive jurisdiction to review on protest the decisions of any collector of customs, including all orders and findings entering into the same, as to the rate and amount of duties chargeable and as to all exactions of whatever character within the jurisdiction of the Secretary of the Treasury; decisions excluding any merchandise from entry or delivery, under any provision of the customs laws; and the liquidation or reliquidation of any entry, or the refusal to pay any claim for drawback or to reliquidate an entry for a clerical error as provided by the customs laws."

The district court was of the opinion that these statutes committed the subject matter of Argosy's complaint to the exclusive jurisdiction of the Customs Court. Argosy argues, however, on the authority of vintage cases,[3] that these statutes place within the jurisdiction of the Customs Court only questions relating to the rates and amounts of duties chargeable on articles which are conceded to be imported, and do not commit the question of importation itself to Customs Court scrutiny. Quite simply, the issue on this appeal is whether or not a district court is the proper forum in which to determine if an article is "imported" within the meaning of 19 U.S.C.A. § 1202.[4] In view of our conclusion set forth below that the issue of importation is exclusively within the jurisdiction of the Customs Court, we do not consider whether the *Fountainbleau II* is in fact an import, or whether it is owned by a resident of the United States or brought into the United States for charter or sale within the meaning of Item 696.10. Such deter-

minations involve facts to be ferreted out by the tribunal vested by Congress with the appropriate decisional authority.

The jurisdictional question here in dispute is not one of first impression. Rather it has an important, though somewhat aged judicial antecedent in the Supreme Court case of Ex Parte Fassett, 1892, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087. *Fassett* supports Argosy's position that the district court and not the Customs Court has jurisdiction to determine whether or not an item is an import. Were *Fassett*, therefore, the only authority on the subject, we would have to decide in Argosy's favor. It is our view, however, that *Fassett* is no longer controlling on the import issue. *Fassett* was decided under authority of the Customs Administrative Act of 1890. Since that time the Act has been superseded by the Tariff Laws of 1909, 1913, 1922, and 1930. These revisions have subjected the tariff laws to such substantial statutory permutations that *Fassett* can be considered good law today only to the extent that the terms of the Customs Administrative Act discussed therein have been carried forward into the Tariff Act of 1930.

As we read *Fassett*, the decision in that case was predicated largely upon two characteristics of the Customs Administrative Act. The first had primarily equitable dimensions. It rested on the belief that the district court was the only forum open to plaintiff because of the particular protest mechanism then in use. The Supreme Court found that the means necessary to bring plaintiff's claim before the Customs Court would simultaneously interdict his chances of having the import issue reviewed:

"Under the customs administrative act, the libelant, in order to have the benefit of proceedings thereunder, must concede that the vessel is imported merchandise, which is the very question put in contention under the

---

3. Ex Parte Fassett, 1892, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087; De Lima v. Bidwell, 1901, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041; Dooley v. United States,

1901, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074.

4. See note 1, supra.

libel, and must make entry of her as imported merchandise, with an invoice and a consular certificate to that effect, and thus estop himself from maintaining the fact which he alleges in his libel,—that she is not imported merchandise." Ex parte Fassett, 1892, 142 U.S. 479, 12 S.Ct. 295, 299, 35 L.Ed. 1087, 1090–1091.

Argosy on this appeal is in no position to plead this dilemma. The Customs Director concedes that Argosy may have review of the dutiability of its yacht "by the simple expedient of paying the assessment of duty * * * under protest and seeking to recover it in the Customs Court" 19 U.S.C.A. §§ 1514, 1515; 28 U.S.C.A. § 1583. More importantly, the Court of Customs and Patent Appeals has held in United States v. Porto Rico Coal Co., 1929, 17 C.C.P.A. 288, T.D. 43716, that the filing of a consumption entry does not estop a claimant from challenging the assessment of a customs duty. The Porto Rico case also involved the question of whether a vessel was imported into the United States. The government contended that:

> " * * * under authority of In re Fassett, 142 U.S. 479, [12 S.Ct. 295, 35 L.Ed 1087] the appellee in this case is estopped by his entry of the *Berwind* from now claiming that she is not a dutiable article." United States v. Porto Rico Coal Co., 1929, 17 C.C.P.A. 288, 292 T.D. 43716.

After exploring the legislative modifications in the customs laws that had occurred since *Fassett*, the Court said:

> "We are of opinion the *Fassett* case was decided in view of the particular statute in force at that time, and can not be held to be applicable now. To hold that an importer is bound and estopped by each statement he makes in his entry, under present laws, would not only greatly interfere with and cripple the commerce of the country, but, in our judgment, is far from the intent of Congress as expressed in the various acts which have been cited

and referred to." United States v. Porto Rico Coal Co., 1929, 17 C.C.P.A. 288, 294, T.D. 43716.

We also find that *Fassett* was "decided in view of the particular statute [then] in force." Today's statutory framework, as indicated by the *Porto Rico* case, no longer debars the presentation of a claim contrary to the assertions in a consumption entry. Unlike the plaintiff in *Fassett*, Argosy will not be bound or estopped from raising its claim in the Customs Court.

The passing of the estoppel principle does not, however, altogether dispose of *Fassett*. As already noted, estoppel was only one of the characteristics of the Customs Administrative Act which *Fassett* considered. The other, and perhaps more important characteristic, related to the authority conferred by the Act on the Customs Collector, the official who made the original assessment. The Supreme Court found that the scope of the Customs Collector's authority did not extend to the determination of whether or not an item was an import. The Court reasoned that if the Collector lacked such authority, then the Customs Court, on appeal from the Collector's decision, could not properly have the import issue before it:

> " * * * The decisions of the collector from which appeals are provided for by section 14 are only decisions as to 'the rate and amount' of duties charged upon imported merchandise, and decisions as to dutiable costs and charges, and decisions as to fees and exactions of whatever character. Nor can the court of review pass upon any question which the collector had not original authority to determine. The collector has no authority to make any determination regarding any article which is not imported merchandise; and, if the vessel in question here is not imported merchandise, the court of review would have no jurisdiction to determine any matter regarding that question, and could not determine the very fact which is in issue

under the libel in the district court, on which the rights of the libellant depend." Ex Parte Fassett, 1892, 142 U.S. 479, 12 S.Ct. 295, 298, 35 L.Ed. 1087, 1090.

The statute which presently governs the authority of the Customs Collector has been substantially modified since the time of *Fassett*. Whereas the 1890 Act stipulated in paragraph 14 that the decison of the collector as to the rate and amount of duties chargeable upon "imported merchandise * * * and as to all fees and exactions of whatever character (except duties on tonnage)," should be final if not appealed from (26 Stat. 137), the Tariff Act of October 3, 1913, Section III, subsection N. modified this language by addition of the words, "or upon merchandise on which duty shall have been assessed." Arguably this amendment conferred on the Collector an authority separate and distinct from his authority over "imported merchandise." Such interpretation is fortified by the Tariff Act of 1922, section 514, wherein the authority of the collector was further

extended. The term "imported merchandise" was dropped altogether from the statute, and the significant phrase "including the legality of all orders and findings entering into the same" was added. The language of section 514 was carried over into the Tariff Act of 1930 without change, and is presently codified in 19 U.S.C.A. § 1514.[5]

■ This statutory trend toward a more comprehensive authority for the Customs Collector (statutory equivalent of the District Director),[6] further weakens the vitality of *Fassett*. We think that Congress, by deleting the "imported merchandise" language of section 14 and adding "including the legality of all orders and findings entering into the same," plainly authorized the Collector to determine whether merchandise was imported. This authority was likewise extended to the scope of review in the Customs Court. Thus, 28 U.S.C.A. § 1583 establishes by the phrase, "including all orders and findings entering into the same," that the Customs Court's jurisdic-

5. 19 U.S.C.A. § 1514. Protest against collector's decision

Except as provided in subdivision (b) of section 1516 of this title (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the im-

porter, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation."

6. 19 C.F.R. § 1.1(d) (1968)

Unless otherwise indicated, "district director of customs," "collector of customs," "appraiser of merchandise," and variations of those terms, such as "district director," "collector of district," "collector," "deputy collector," or "appraiser" as used in this chapter shall mean the district director of customs at a headquarters port. * * *

tion is coextensive with the Collector's decision-making power.

■ In both of these statutes, we think the word "including" is not to be restricted to the "rate and amount of duties chargeable," but read in relation to the phrase, "all decisions entering into same." "The word 'includes' is usually a term of enlargement, and not of limitation." United States v. Gertz, 9 Cir. 1957, 249 F.2d 662, 666. It therefore conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes. Federal Land Bank of St. Paul v. Bismarck Lumber Co., 1941, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65, 70. In the present context, the term "including" instructs us that the decisions of the Collector are reviewable not only in their common components such as rates and amounts, but also in terms of other components and constituents of decision left unmentioned. The question of whether or not an article is an import seems properly within the Collector's decisional authority. Indeed, without it his decisional capacity would be paralyzed at the threshold and he would never reach the subordinate issue of rates and amounts.

■ This interpretation is commensurate with the proposition that when Congress amends a law the amendment is made to effect some purpose. Louisville Country Club, Inc. v. Gray, W.D. Ky.1959, 178 F.Supp. 915, aff'd 6 Cir. 1960, 285 F.2d 532. Every word used in a statute is presumed to have a meaning, and, if possible, every word must be accorded significance and effect. General Motors Acceptance Corp. v. Whisnant, 5 Cir. 1968, 387 F.2d 774. We are not at liberty to disregard the successive amendments which have occurred since

*Fassett.* They indicate that the jurisdiction of the Customs Court is today considerably more comprehensive than was the jurisdiction of its predecessor, the United States Board of General Appraisers, in 1892. Its jurisdiction not only is exclusive of other courts, but over the years has grown more inclusive whenever matters pertaining to the customs laws have been concerned.[7] Cf. Cottman Co. v. Dailey, 4 Cir. 1938, 94 F.2d 85; Patchogue-Plymouth Mills Corporation v. Durning, 2 Cir. 1939, 101 F.2d 41; Eastern States Petroleum Corporation v. Rogers, 1960, 108 U.S.App.D.C. 63, 280 F.2d 611, cert. den., 1960, 364 U.S. 891, 81 S. Ct. 222, 5 L.Ed.2d 187.

■ In reaching this conclusion we are mindful of the admonition that statutory construction must not occur in a vacuum. Statutes are contextual as well as textual. Securities & Exchange Commission v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88. Their proper interpretation requires more than mere linguistic seriation. Courts must also look to the logic of Congress and to the broad national policy which prompted the legislation. Miller v. Amusement Enterprises, Inc., 5 Cir. 1968, 394 F.2d 342, 353.

■ In the present instance, we are cognizant of the Congressional purpose to provide "a complete system of corrective justice with respect to matters arising under the customs laws." Cottman Co. v. Dailey, 4 Cir. 1938, 94 F.2d 85, 88. So strong is this policy that even constitutional issues in customs cases begin their journey in the Customs Court. Eastern States Petroleum Corp. v. Rogers, supra. No reason appears for according special treatment to the import issue. In fact, logic and policy militate

---

7. See also Berry, The Esoteric World of Customs Law, 54 A.B.A.J. 975, 978:

"Since original jurisdiction for customs cases is vested with the Customs Court and appellate jurisdiction with the Court of Customs and Patent Appeals, it is fruitless to strive to settle customs issues in the United States district courts through writs of mandamus or injunctions against the Secretary of the Treasury. This has been attempted many times in the past, and district courts have dismissed petitions for such extraordinary writs on the basis that exclusive jurisdiction is vested in the Customs Court."

against such a practice. To allow the question of importation to be determined in one court, and the rates and duties chargeable in another, would only fractionate the administration of the customs laws and defeat the congressional policy of decisional uniformity. Cf. Thomason v. United States, 9 Cir. 1950, 184 F.2d 105. The result would be a waste of judicial resources and an irrational disregard for the expertise which the Customs Court possesses. Such considerations confirm us in our conclusion that the Customs Court is the exclusive cessionee of controversies involving importation as well as post-importation problems.

Nothing in this result should be construed as inconsistent with the teaching of Cottman v. Dailey, supra, that in exceptional or extraordinary circumstances a district court may properly enjoin acts by the Secretary of the Treasury or his assistants, including a District Director of Customs, when such acts threaten irreparable injury. But the term "exceptional or extraordinary circumstances" implies the unavailability of an adequate remedy at law. Argosy's sole reason for seeking to bypass the Customs Court is the contention that the filing of a consumption entry will estop it from raising the importation issue. As already indicated, United States v. Porto Rico Coal Co., supra, such a possibility is no longer tenable. Since Argosy's remedy in the Customs Court is adequate, and since in the words of Cottman v. Dailey, 4 Cir. 1938, 94 F.2d 85, 89:

"The mere fact that the act of Congress is alleged to be unconstitutional or the imposition of the duty beyond the statutory power of the Secretary of the Treasury or his assistants does not present a case for equitable interference where such legal remedy is provided,"

the judgment of the district court must be affirmed.

Affirmed.