No. 12.—Executors of Majors Henderson, plaintiff in error, *vs.* Moses H. Alexander, adm't of Moses Alexander, defendant.

[1.] Under the Judiciary Act of 1799, where both plaintiff and defendant die before *scire facias* has issued to make parties, the action does not abate; but parties may be made and the action proceed.

*Scire Facias* to make parties after death of both plaintiff and defendant. Returned before Judge Warren, in Randolph Superior Court, and overruled October Term, 1847.

For the facts of the case, see the opinion of the Supreme Court.

Alexander McDougald, Grigsby E. Thomas, H. J. Devon, and William Taylor, for the plaintiff in error.

Hines Holt & Henry L. Benning, for the defendant in error.

Messrs. McDougald & Thomas, of counsel for the plaintiff in error, cited and commented on the following authorities: *Prince Dig.* 422, 419, 570, 911; 1 *Black. Comm. m. p.* 91, 88, 60, *t. p.* 40, *n.* 12, *m. p.* 89, 90, 61, 86, *n.* 25, *t. p.* 61, *n.* 30, *t. p.* 60, *n.* 26, *m. p.* 86, 87; 6 *Jacobs Law Dic.* 19, 17, 18, 21, 25; 1 *Wils.* 315; 1 *T. R.* 388; 11 *Vin. Abr.* 1; 19 *Vin. Abr.* 280; 2 *Bac. Abr.* 128; 6 *Bac. Abr.* 102; 2 *Saund.* 72; 3 *H. Plead.* 436; *Bou. Law Dic. Scire Facias;* *Hob.* 346; *Plowd.* 109; 3 *Co.* 7; *Tidd's Pr.* 848; *Toll. on Exec.* 422; 7 *T. R.* 31; 1 *Salk.* 8; 1 *Sel. Pr.* 187; *Arch. Pr.* 76; *Bac. Abr. Schley's Dig.* 288, 246, 247, 290; *Jeremy's Eq. Juris.* 306, 399; 19 *Johns. R.* 173; 2 *Burr; Act of* 1845, 40; 3 *Blac. Com. m. p.* 302, 399, *n.* 10; 2 *Saund. R. t. p.* 72; 2 *Tidd's Pr. t. p.* 1116, 1119, 1095; *Tidd's Ap. t. p.* 324, 325; 4 *Bac. Abr. t. p.* 649, *til. Statute;* 1 *Salk.* 319, 320.

*By the Court*—Nisbet, J. delivering the opinion.

The facts disclosed in the record of this cause are as follows. Majors Henderson sued the defendant, Moses Alexander, in an action of debt, upon a promissory note. Pending the action, the defendant filed a bill enjoining it. This bill, after some years of litigation, was dismissed by the complainant, and left the Common Law action to proceed. There was a confession of judgment for

the plaintiff, and an appeal entered. In 1839, or 1840, the plaintiff died, and, at August Term, 1840, his death was suggested on the record of the Court below. On the 7th of January, 1841, *scire facias* issued to make the executor of the plaintiff a party, which was served on the defendant personally on the 14th of the same month ; but no order was taken upon the return of the writ to make parties. The reason of this, we suppose is, that the executor of the plaintiff had been made a party to the bill, which held the action at law enjoined, until the April Term, 1843, when it (the bill) was dismissed. This accounts for there appearing to be no action on the *scire facias*, intervening its return and 1843. At October Term, 1843, the death of the defendant, Moses Alexander, is suggested on the record, he having died a short time previous. At the April Term following, the entry on the docket, is "no Parties." On the 3d of March, 1846, two other writs of *scire facias* issued, which were both served on the 20th of that month. Each of these writs recited the history of the case, and in each the administrator with the will annexed of the defendant, Moses H. Alexander, was notified to appear and show cause, why the executor of the plaintiff should not be made a party plaintiff, and why he should not be made a party defendant to the suit. At the April Term, 1846, an order was passed calling upon the administrator with the will annexed of Moses Alexander, deceased, to show cause why, in pursuance of the requirements of the writs, he should not be made a party defendant; and why one Sutliffe, who was the executor of the plaintiff, should not be made a party plaintiff. At the October Term following, an order was passed dismissing the two writs of *scire facias*, the presiding Judge determining that the action abated, because both plaintiff and defendant died after the commencement of the suit, and before the writs of *scire facias* were sued out, and therefore no parties could be made. To this judgment of the Court the counsel for the plaintiff excepted, and claims now that the decision was erroneous. We do not think that the bill in Chancery in any way affects this question, and shall therefore consider it wholly irrespective of that bill. Being dismissed, it had ceased to affect the case long before the judgment complained of.

[1.] This question is one mainly of statutory construction; and, although confined in narrow limits, is one of no ordinary magnitude. *Our opinion is, that the action in the case made by the record did not abate, and that the parties ought to have been made.*

The counsel who argued this cause for the defendant in error,

contend, that no part of the Act of 8 & 9 *William III, ch.* 11, *sec.* 6, relative to the survivorship of actions, is now of force in Georgia, our own act of 1799 having been substituted for it; and that, if the right to make parties in the case before us exists at all, it is derived from our Act of 1799; they deny that it can be derived from that act, upon any fair construction of it, and, therefore, that it exists at all. Our inquiries will, therefore, be directed to two points, to wit: First. Does this suit abate, or can parties be made, according to the Act of 1799; and second, is any part of the Statute of 8 & 9 *William III, ch.* 11, *sect.* 6, of force in Georgia, and can parties be made in this cause under that statute?

That part of the 12th section of the Judiciary of 1799, which relates to this subject, is in the following words:—

"And no suit in any of said courts shall abate by the death of either party, where such cause of action would in any case survive to the executor or administrator, whether such cause of action would survive in the same or any other form; but the same shall proceed as if such testator or intestate had not died, under the restrictions and regulations following.—When a plaintiff shall die, in any case aforesaid, the executor or administrator of such plaintiff, shall within three months after taking out probate of the will, or letters of administration, give notice to the defendant or defendants by *scire facias* to issue out of the clerk's office, returnable in the manner herein before prescribed for the issuing and return of process. And in cases where the defendant shall die, it shall and may be lawful for the plaintiff to issue a *scire facias* in manner aforesaid, immediately after the expiration of twelve months, requiring such executor or administrator to appear and answer to said cause." *Prince*, 422. The construction put upon this act by the learned counsel is altogether too literal to command the sanction of this Court. We cannot stick so refiningly in the letter. Broader and stronger views of this statute are commended to us by common sense, as well as by the well established rules of construction. And whilst the argument of the counsel illustrates their acumen, it has failed to convince the Court. What is the argument? It is summarily as follows.—The Act of 1799 makes no provision for a case like the present, where both parties die before final judgment. It is *casus omissus*, and the Court cannot supply the omission. The *terms* of the statute do not embrace, but do in fact exclude the case. The general declaration, that "*no suit* in any of said Courts *shall abate* by the death of either party,

where such cause of action would in any case survive to the execu-
tor or administrator," &c. is qualified by the further declaration,
that such suit "shall proceed as if such testator or intestate had
not died, under the *restrictions* and *regulations following*." The
*restrictions* limit the right of making parties to cases where the
plaintiff shall die, the *defendant* being in life; because the lan-
guage of the Statute is, "when a *plaintiff* shall die, in any case
aforesaid, the executor or administrator of such plaintiff shall·
within three months after taking out probate of the will or letters
of administration, give notice to the *defendant* or *defendants*," &c.
The words *defendant* or *defendants*, are to be understood as de-
scriptive of the natural person against whom the action is brought,
and if he be dead, then there is no person in *esse*, according to the
act, upon whom the service of the notice shall be made, and of
consequence, the action must abate. In this case therefore, the
*defendant* being dead before the service of the *sci. fa.* upon which
the Court was called to act, the action abated. And to cases
where the *defendant* shall die, the *plaintiff* being in life—for the
language of the statute is, "in cases where the defendant shall
die, it shall and may be lawful for the *plaintiff* to issue *scire facias*
in manner aforesaid," &c.—the word *plaintiff* is descriptive of
the natural person who instituted the suit, and if he be dead, there
is no person in *esse*, according to the statute, who shall issue the
*scire facias*, and the suit must abate. In this case, the defendant
dying, the plaintiff being already dead, there was no person in *esse*
who could issue the *scire facias*, and therefore this action must
abate. The only instance in which the representative of either
party can move to make parties under the Act of 1799, is the case
where the plaintiff dies, the defendant being in life; and that is not
this case. Both parties dying before final judgment, and before
the issue and service of the *sci. fa.*, there was no case in Court;
nothing remaining upon which the Court could predicate a mo-
tion to make parties; the suit was dead, and the Court below had
no power to breathe life into it. Any one has the right as much
as the executor of the plaintiff, to go into the clerk's office and
demand a writ to make himself a party—the statute confers this
right as much upon a stranger as upon the executor—it is mani-
festly contrary to law to permit a stranger thus to come in and
prosecute the suit, it is therefore manifestly contrary to law to per-
mit the executor to do so.

Such is the construction of this statute, by the defendant in error.

Ex'rs of Henderson *vs.* Alexander, adm'r.

The argument labours, by mere verbal criticism, (by the way the least satisfactory of all the forms of professional argumentation,) to escape from the obvious, even palpable, meaning of the Legislature. The reply that I shall make to these views will also embrace our own construction of the Act of 1799. We shall take as our guide the following rules, to wit:

*First.* Statutes that are remedial, are to receive an equitable interpretation, by which the letter of the Act is sometimes restrained and sometimes enlarged, so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. They are to be construed liberally and *ultra,* but not *contra* to the strict letter. 1 *Kent,* 464; *Dwarris on Stat.* 726.

*Second.* It is the duty of Judges so to construe remedial statutes as to repress the mischief, and advance the remedy. 11 *Coke,* 71 *b*; 1 *Kent,* 464; and in the application of this rule they are to consider the law as it stood before the act—the mischief against which it did not provide—the remedy which the Legislature has provided, and the reason of the remedy.

*Third.* The intention of the Legislature is to be deduced from a view of the whole and every part of a statute, taken and compared together. *Coke Litt.* 381 *a;* 12 *Wheat. R.* 332.

*Fourth.* The real intention of the Legislature, when accurately ascertained, will always prevail over the literal sense of terms. 1 *Kent,* 461; 15 *Johns. R.* 380; 14 *Mass. R.* 92.

*Fifth.* Several acts *in pari materia,* and relating to the same subject, are to be taken together and compared in the construction of them, even though some of the statutes have expired, or are not referred to in other acts. 1 *Burrow R.* 445; *Doug. R.* 27; 4 *T. R.* 447 *a* 450; *Dwarris on Stat.* 699.

We consider the statutes of 17 *Car. II, c.* 8, *sect.* 1, and 8 & 9 *Will. III, c.* 11, *sec.* 6, as *in pari materia,* with our *Act of* 1799, (for these statutes, see 2 *Tidd Pr.* 1116 *a* 1117,) they having been adopted as the law of this State, (*Hotchkiss,* 93,) and having the same object in view, to wit, the prevention of the abatement of civil actions, as they abated at Common Law. How far these English statutes are repealed by our *Act of* 1799, we do not now inquire; for the present we say, under the fifth rule above laid down, whether repealed or not, we are entitled to consider them, with a view to ascertain the intention of the Legislature in the passage of that act. How stood the old law before the statutes of Charles II and William III? Why it was thus it stood. The death of either party,

plaintiff or defendant, abated the action, and the rights of the parties could alone be determined by a new suit. These statutes were passed "for the avoiding of unnecessary suits and delays." The unnecessary suits and delays was the mischief, and the survivorship of actions the remedy provided to suppress it. The remedy was intended to be co-extensive with the mischief, and, as before the statutes, all actions sounding in contract abated upon the death of either party, so by the statutes all such actions were intended to survive upon the death of either or both the parties. The remedy is perfectly reasonable in itself, and it is manifestly reasonable to extend it to all cases where one or both parties shall die. Who shall give a reason why the action should be made to survive, by process to make the representative a party, in case *one* party dies, and to abate in case *both* parties shall die? In the latter instance the reasoning is, to my mind, the stronger. The British Parliament, however, have not left this matter to construction, for they have expressly provided, by the statute of William III, for just such a case; a case like the present, where both parties die, after interlocutory and before final judgment. Now, the object of our Legislature in passing the Act of 1799 was precisely the same with that of the British Parliament in passing the Act of William; the mischief was the same, and the remedy I have no doubt was intended to be the same; the same in character and the same in extent. Our statute is in affirmance of that of William III, and our Legislature re-enacted it only, as appears to this Court, with a view to adopt the restrictions and regulations which are found in the Act of 1799. To what *they* relate we shall see directly. They certainly are not intended to limit the cases to which the statute, in its first general enacting clause, obviously applies. We say, then, that the intention of the Legislature was *that no suit* should abate in any case by the death of the party, where *the* cause of action would survive to the executor or administrator, in the same or any other form. It is barely necessary to remark that, an action on this promissory note would survive to the executor at Common Law. Of this we apprehend there is no doubt.

We have endeavoured to deduce this intention from the state of the law as it stood before the statutes of *Charles and William*, and from a consideration of those statutes, particularly that of *William* III, they being *in pari materia* with our Act of 1799. We think further, that this intention is deducible from the language of that act. The Legislature declare, " and *no suit* in any of said Courts

*shall abate* by the death of either party." This language is just as general, and comprehends *all suits* as fully and plainly as if the Legislature had declared affirmatively, that *all suits*, in the event of the death of either party, *shall survive.* There is but one limitation as to the suits that are not to abate, and that limitation refers to causes of action that do not survive in the same or any other form to the executor or administrator of the deceased party. *This* cause of action does not fall within the exception, because it does survive. The Legislature further say, "the same (that is suits) *shall proceed* as if such testator or intestate had not died." And how proceed? "Under the *restrictions* and *regulations* (says that act) following." The words *restrictions* and *regulations* in the clause last quoted, have an immediate relation to the words *shall proceed* in the same clause, and refer to the *manner* and *circumstances* under which suits shall proceed upon the death of either party, and the remainder of the section is occupied in detailing the *manner* of *proceeding* to make parties. For example, it provides that the process shall be *scire facias*—that in case of the death of the plain-tiff, his executor or administrator shall, *within three months* after taking out probate of the will or letters of administration, give notice to the defendant. (We remark that the word *shall* in this clause of the law, has been very generally construed to mean *may;* a construction which we will not disturb, particularly as all diffi-culty about its meaning has been removed by the Act of 1845.) That in case of the death of the defendant, the *scire facias* to make his representative a party, shall not issue *until twelve months after his death*, and that the *scire facias* shall issue out of the clerk's office and be returnable in the manner which the same act pre-scribes for the issuing and return of process. The latter part of this section of the act, we are satisfied, does not, as claimed by counsel for the defendant in error, limit the cases in which the representatives may be made parties; but contains restrictions and regulations as to the manner in which, and the times and circum-stances under which, the suits, in the language of the act, " *shall proceed.*" With this construction the first and second clauses harmonize — with that of the defendant's counsel they conflict. And it is the duty of the court, if possible, so to construe a statute as that effect shall be given to each and every part of it.

This is confessedly a remedial statute, and must receive a be-nign and liberal construction. If we restrict its operation to cases where only one of the parties dies before the issuing and service

of the *scire facias*, then we apply to it the rule of strict construction. We do not advance the remedy so as to repress the mischief, but we repress the remedy and advance the mischief. That is to say, the mischief of " unnecessary suits and delays," to an extent not contemplated by the Legislature, continues.

The words *plaintiff* and *defendant*, in our judgment, as used in the latter clause of this section of the Act of 1799, are not descriptive of the natural persons who sue and are sued, as claimed by the counsel for the defendant, but are used in the sense of parties, or those who, in legal contemplation represent the parties. They are, therefore, descriptive of the executor or administrator of the parties, as well as of the parties themselves, if in life. Under this view of their meaning, in case of the death of the plaintiff and the defendant, to make the plaintiff's representative a party, notice may be given to the executor or administrator of the defendant; and, in case of the death of plaintiff and defendant, in order to make the representative of the defendant a party, the executor or administrator of the plaintiff may issue the *scire facias*. And this was the course pursued in this cause.

But, admitting that the construction of these terms, given to them by the defendant's counsel, *argumenti gratia*, is the true meaning, then we say that the intention of the Legislature, in the Act of 1799, is so accurately ascertained and so conspicuously manifest, that it ought, in this case, to prevail over the literal sense of the terms. We would, if that were the true meaning of the letter of the act, give to it an equitable construction, and so *enlarge* the letter as more effectually to meet the end in view, and prevent the failure of the remedy. This is clearly one of those cases where the courts may safely apply this rule of statutory construction.

An argument was derived from the definition of a suit, (to wit, *Parties*, a cause of action and a Court,) in behalf of the defendant in error, by one of his ingenious counsel. He argued that, inasmuch as the plaintiff and defendant were both dead before the issuing and service of the *scire facias*, there were no *parties* before the Court, and therefore no suit. This argument, if it were sound, proves too much; for it proves that if one only of the parties be dead then there is no suit, and in that event the representatives could not be made parties. For the requirement of the argument is, that there shall be not a *party*, but parties. This mode of argument would nullify altogether the *Act* 1799. But we may concede that, at the time the *scire facias* issued in this case there were no parties

before the court—the action could not proceed; and that, in the then position of things, the rights of the deceased litigants could not be adjudicated. All this we do concede, for it is all true; yet all this does not affect this question; for in this very position of things the law lays its strong hand upon the rights of the parties and holds them; and also holds the litigation in abeyance, until, according to its own mandate, those who represent the deceased plaintiff and defendant shall be brought in, to conduct the litigation to a conclusion. It is a mistake to suppose that the case, when parties are made, proceeds as between the first parties; the cause of action, it is true, is still the same, but it is litigated by the new plaintiff as a trustee; and, if judgment is had against the new defendant, it is had against him, unless in some way he omits or violates his duty, in his representative character. In several respects it is a new case. The record of all previous action is retained, and such rights as have already accrued to either party are secured; the lien of a judgment in case of appeal, and the security on the appeal, for example. "By what right, inquires the counsel for the defendant in error, does Sutliffe, the executor of the plaintiff, go into the office of the clerk of the Superior Court and demand a *scire facias* to make himself a party? there is no suit pending, and he cannot be heard any more than any other man." We answer, by the same right that any citizen institutes a suit against his neighbour, and files his writ in the clerk's office and demands a process. It is a matter of mere right to demand and have the writ of *scire facias.* The record, as it stands before the clerk, shows the death of the parties, for their death was suggested; in that event the law, with a potency which none can resist, commands the writ to issue, and the clerk must obey or not, at his peril. He has no more power to judge of the propriety of issuing the writ, when the death of one or both parties appears from the record, than he has of the propriety of issuing a process at the instance of any citizen, upon an action of assumpsit for a money demand, properly filed in his office. The issuing and service of the writ does not make the parties, any more than a process in debt establishes the plaintiff's demand. The making of parties is not the act of the executor, nor is it the capricious or arbitrary act of the Court, but it is the solemn judgment of the Court upon an issue made at the return of the *scire facias.* This writ is in the nature of an action; *Reed* vs. *Sullivan,* 1 *Kelly's R.* 292, 3; an action to which the defendant may plead, and to which, in this case, he did plead; an action in

which it is incumbent upon the plaintiff to show his right to make himself, or the defendant, a party; and when he does show this, the Court has no discretion, but must give its judgment accordingly. Who is injured by this proceeding ? who is surprised ? or who that is interested is deprived of his day in court ? No one. We think that, according to a just and reasonable construction of our own statute, this action did not abate, and that the representatives of the deceased plaintiff and defendant ought to have been made parties.

If the action did abate under the Act of 1799, we should unhesitatingly say, that the Act of *William III.* applies to it, and that under that act parties ought to have been made. By the Act of 25th February, 1784, usually called the Adopting Act, the Legislature declared " that all and singular the several acts, clauses and parts of acts that were in force and binding on the inhabitants of the said province, on the fourteenth day of May, A. D. one thousand seven hundred and seventy-six, so far as they are not contrary to the Constitution, laws and form of government now established in this State, shall be, and are hereby declared to be, in full force, virtue and effect, and binding on the inhabitants of this State, immediately from and after the passing of this act, &c. until the same shall be repealed, amended or otherwise altered by the Legislature." *Hotchkiss,* 93. By this act it is perceived that the statute laws of Great Britain, of force in the province of Georgia on the 14th of May, 1776, not contrary to the Constitution, laws and form of government of this State, were declared to be the law of the State until repealed, amended, or otherwise altered by the Legislature. Among the statutes of Great Britain of force in the province of Georgia on the 14th May, 1776, is the Act of 8 and 9 *William III, ch.* 11 *sec.* 6 ; which statute was not contrary to the Constitution, laws and government of the State. So much of that statute as concerns this question is in the following words, to wit: "In all actions to be commenced in any Court of Record, if the plaintiff or defendant happen to die after interlocutory and before final judgment, the action shall not abate by reason thereof, if such action might have been originally prosecuted or maintained by or against the executors or administrators of the party dying, but the plaintiff, or if he be dead after such interlocutory judgment, his *executors* or *administrators*, shall and may have a *scire facias* against the defendant, if living, after such interlocutory judgment, or if he died after, then against his executors or adminis-

*trators*, to show cause why damages in such action should not be assessed and recovered by him or them. And if such defendant, his executors or administrators, shall appear at the return of such writ, and not show or allege any matter sufficient to arrest the final judgment, or being returned warned, or upon two writs of *scire facias* it be returned that the defendant, his executors or administrators had nothing whereby to be summoned, or could not be found in the county, shall make default; that thereupon a writ of inquiry of damages shall be awarded, which being executed and returned, judgment final shall be given for the said plaintiff his executors or administrators, prosecuting such writ or writs of *scire facias* against such defendant, his executors or administrators respectively." This statute makes in express terms provision for just the case now before this Court—for it enacts that *the plaintiff* if living, and if dead *his executors or administrators* shall have a *scire facias* against the *defendant* if living, and if dead, *against his executors or administrators*, to show cause, &c.

But say the defendant's counsel, this act is repealed by the Act of 1799. It is not expressly repealed, for there are no words to that effect in the Act of 1799. The last declared will of the Legislature touching this subject matter, we admit must prevail. The Act of 1799, so far as it is identical with the Statute of *William*, takes the place of that statute, and so far as it conflicts with, repeals it. So far as it goes, it supplants that statute; and so far as it falls short of it, it leaves that statute in full force, unless *all* the provisions of that statute are repealed expressly or by implication. Now the argument of the counsel is, that the *Act of 1799* does fall short of the Statute of *William* in this, that it makes no provision for *scire facias* to issue where both parties have died, and that statute does make such provision. This being admitted on both sides for the argument's sake, the only question remaining is this, to wit : is that provision of the Statute of *William* which authorises *scire facias* to issue when both parties have died, repealed by what is enacted in the *Act of* 1799? We think not; as before stated there is no express repeal, nor is it repealed by implication, because there is no conflict between the provision of the English Statute referred to and the provisions of the Georgia Statute. Both may well stand—the enforcement of the former does not in any way interfere with the enforcement of the latter. The remedy which our act affords does not go the length of the remedy given by the Act of *William*, and that is all that can be

said of it. Our act occupies the place of the English Statute so far as it is identical with it, and no farther—and so far as it is not identical with it, leaves it in the position it occupied at the time we adopted it.

Under every view which we can take of this record, we must think there is error in it, and are compelled to reverse the judgment of the Court below.