**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

v.

**E. Mullins WHISNANT, Trustee in Bankruptcy of John Chesley Fanjoy, Jr., Bankrupt, Appellee.**

**No. 24131.**

United States Court of Appeals Fifth Circuit.

Jan. 5, 1968.

Rehearing Denied April 4, 1968.

---

16. 9 U.S.C. § 5.

17. 5 Purdon's Pa.Stat.Annot. § 164.

18. See Formigli Corp. v. Alcar Builders, Inc., 236 F.Supp. 586 (E.D.Pa.1964).

Forrest L. Champion, Jr., Columbus, Ga., for appellant.

Edward P. Murrah, Jr., Marilyn W. Carney, Columbus, Ga., for appellee.

Before TUTTLE, BELL, and SIMPSON, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The essence of this case is the validity of the action of the Bankruptcy Court in taking an automobile for which appellant (GMAC) had furnished the purchase price and turning it over to the trustee for the benefit of other creditors. The District Court affirmed.

The complexity of the question presented stems from the intricacies of the Georgia Motor Vehicle Certificate of Title Act and the Uniform Commercial Code as adopted in Georgia. These Acts were adopted at the same session of the Georgia General Assembly. They relate in part to the same subject matter and must be construed in pari materia.[1]

The Bankruptcy Court relied on the Title Act for its decision. GMAC, as the holder of a security interest in the automobile, urges a different result based on another section of the Title Act, or, failing in this, that it is protected by a section of the UCC. This latter proposition rests on the assertion that the UCC, the last Act adopted, effected a pro tanto repeal of the section of the Title Act on which the Bankruptcy Court relied. The Title Act was adopted and approved on February 16, 1962 and became effective on July 1, 1962. The

---

1. "Several acts in pari materia and relating to the same subject matter are to be taken together and compared in the construction of them * * *" Henderson's Ex'rs v. Alexander, 1847, 2 Ga. 81, 85. They are to be considered together as if they were one law. Smets v. Thomas, 1837, 1 Ga.Reports Annot., 308, 309, R.M.Charlton, 537, 539.

UCC was adopted and approved on February 27, 1962 and became effective on January 1, 1964. Under the view we take of the case we pretermit the question of the UCC having repealed the provision of the Title Act which the Bankruptcy Court deemed controlling. We hold that a provision of the UCC, Ga.Code § 109A–9–103(4), is applicable and controlling under the facts and that Ga.Code §§ 68–421a(a), (d) (1) and 68–421a(a), (d) (2) (A), which are parts of the Title Act, are inapplicable. It follows that the judgment appealed from must be reversed and judgment rendered for GMAC.

The bankrupt, army sergeant, had just returned from overseas duty when he purchased the automobile in question. He was a resident of Massachusetts and a single man when he enlisted in the army in 1949. He married and lived for a while in Maryland but moved to Alexandria, Virginia in 1955 where he resided until December 10, 1958. At that time he bought a home in Springfield, Virginia and resided there until July 11, 1963 when he was transferred by the army to Bogota, Colombia. His wife and children accompanied him to Bogota and he rented his home in Springfield during their absence. He returned from Bogota on June 10, 1965 under orders to report to Fort Benning, Georgia for duty. He hoped to have his orders changed so that he might be stationed in the Washington, D. C. area but this did not come to pass.

The automobile was purchased on June 14, 1965. The bankrupt reported to Fort Benning, Georgia for duty on June 23, 1965, expecting to be shipped to Vietnam. In that event his wife and children were to occupy his home in Virginia which in the meantime had been vacated by the tenant. As it turned out, appellant purchased a home in nearby Columbus, Georgia after a short residence on the military post. He was adjudicated a bankrupt on a voluntary petition filed January 12, 1966.

The trustee in bankruptcy filed a petition to sell the automobile, claiming that the security interest held by GMAC was not perfected in accordance with the laws of Georgia and that the trustee's claim was thus superior to that of GMAC. Issue was joined on that petition and the pleadings filed by GMAC reflecting its contention that its claim was superior.[2]

The following facts are undisputed. A certificate of title on the automobile was issued by the State of Virginia and the security interest of GMAC was noted thereon and perfected under Virginia law. No certificate of title on the automobile was ever issued by the State of Georgia and GMAC did not file a notice of lien on the automobile with the State Revenue Commissioner of Georgia. It was stipulated that GMAC complied with the applicable laws of the State of Maryland and State of Virginia as to the validity and perfection of its security interest in the automobile.

The issue presented was whether GMAC was required to have a certificate of title issued by the State of Georgia with its security interest noted thereon in order to perfect its lien and security interest as against the trustee in bankruptcy. See Ga.Code §§ 68–419a and 68–421a(b) for Georgia certificate issuance and perfection provisions.

The Referee found that GMAC had notice of the bankrupt's military orders and notice that the automobile would be taken out of Virginia and into Georgia within thirty days. It was in fact taken into Georgia within thirty days. On these findings, which are amply supported by the evidence, he concluded that § 68–421a(a), (d) (1) was applicable and controlling and hence the trustee's claim was superior. That provision of the Title Act is as follows:

68–421a—*Perfection of security interest in and lien against a vehicle.*—(a) The security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors

---

2. The automobile was sold by agreement and the proceeds from the sale are now in issue.

of the owner, subsequent transferees and the holders of security interests and liens on the vehicle by compliance with the provisions of this Chapter.

\* \* \* \* \* \*

(d) If a vehicle is subject to a security interest or lien when brought into this State, the validity of the security interest or lien is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:

(1) If the parties understood at the time the security interest was created or the lien attached that the vehicle would be kept in this State and it was brought into this State within 30 days thereafter for purposes other than transportation through this State, the validity of the security interest or lien in this State is determined by the law of this State.

GMAC takes the position first that this provision of the Title Act was inapposite but that § 68–421a(a), (d) (2) (A) should have been applied. Subparagraphs (2) (A) provide:

(2) If the security interest or lien was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:

(A) If the name of the holder of a security interest or lien is shown on an existing certificate of title issued by that jurisdiction, his security inter-

est or lien continues perfected in this State.

We conclude that both sections are inapposite. Section 68–421a(a), (d) (1) relates to "validity" as distinguished from "perfection". The literal meaning of each term is clear. "Perfection" is a term of art and deals with the status of the secured party as against subsequent creditors and lienholders, whereas "validity" as used in this statute pertains to the status of the security interest between debtor and secured party. A security interest may be valid and yet be unperfected. Indeed, Professor Gilmore, an authority on Article 9 of the Uniform Commercial Code which makes use of the same term in § 9–103(1) thereof, has stated:

> " 'Validity' is an obscure and undefined term. For present purposes we may take it to encompass all aspects of the security transaction *other than perfection*. 1 Gilmore, Security Interests in Personal Property § 10.9 at 320–21." [3] (Emphasis added)

Be that as it may, there is further and overriding reason for our conclusion that there is a difference between the two terms as used in these sections of the Title Act. Section 421a(a), (d) (1) makes no reference to the fact of perfecting a security interest but only settles any conflicts of laws question relating to validity as between Georgia and the jurisdiction where the security in-

---

3. Professor Gilmore although recognizing a difference in the terms, argues that they should be treated as having identical meaning as they are used in § 9–103(3) of the UCC:

"The second sentence of § 9–103(3) provides that, when goods are in State A at the time a security interest attaches but are intended to be 'kept' in State B (and are in fact brought into State B for use within thirty days after attachment), State B will apply its own law to determine the 'validity' of the security interest. In this context there is no conceivable reason for differentiating between 'validity' and 'perfection': that differentiation makes sense only when the goods were initially expected

to remain in State A and the parties contracted with reference to that state's law; in such a case, if the goods are subsequently removed to State B, it is entirely sensible to provide (as § 9–103(3) does) that 'validity' continues to be governed by State A law although 'perfection' (after the four-month delay) becomes a matter of State B law. But when the goods were at all times intended for use in State B, then both validity and perfection should be State B matters; indeed the case for making State B law govern initial perfection is even stronger than the case for making it govern validity."
1 Gilmore, supra, § 22.9, p. 629.

terest attached, here Maryland. It does not contemplate the situation where the security interest is shown on an existing foreign certificate as is the case with § 421a(a), (d) (2) (A). This construction makes statutory sense out of the two sections considered together; otherwise the latter section is mere surplusage and serves no office whatever. What is given by it, under the Bankruptcy Court's reasoning, would have been earlier taken away. "In the construction of a statute, it is the duty of the court, if possible, to give effect to each of its enactments." Harrison v. Walker, 1846, 1 Ga. 32, 34. See also Drake v. Drewry, 1899, 109 Ga. 399, 35 S.E. 44, where the rule is stated that "every part of a statute must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each, for it is not to be presumed that the legislature intended any part of a statute to be without meaning."

Having concluded that § 68–421a(a), (d) (1) does not relate to perfection or that if it does, nevertheless it gives way to § 68–421a(a), (d) (2) (A), we come to a consideration of that section. It too is inapplicable for the reason that it includes only those situations where the lien attaches and is perfected in the same jurisdiction. Here the lien attached in Maryland but was perfected in Virginia. See Ga.Code § 109A–9–204 on when a security interest attaches.

There is thus a hiatus in the law of security interests in the circumstances of this tri-state transaction if left solely to the Title Act. This brings us to an *in pari materia* consideration of the Uniform Commercial Code as it was enacted in Georgia. It appears that § 109A–9–103(4) of that Act is precisely applicable. It provides, after other situations involving movable personalty are set out in subparagraphs (2), and (3), that:

"(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this State *or any other jurisdiction* which requires indi-

cation on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate." (Emphasis added)

 Virginia requires indication of a security interest on its certificates of title as a condition of perfection. § 46.1–70, Virginia Code. It is undisputed that the security interest here of GMAC was indicated on the Virginia certificate of title and it is stipulated that the law of Virginia was complied with in all respects.

We conclude that the case was controlled by § 109A–9–103(4) of the UCC. Judgment was due GMAC and the case is reversed and remanded with direction that judgment be so entered.

Reversed and remanded with direction.