**UNITED STATES of America, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 78 Civ. 2681.**

United States District Court,
S. D. New York.

March 7, 1979.

Richard N. Papper, Asst. U.S. Atty., New York City, for United States.

Isaac Klepfish, Asst. Corp. Counsel, New York City, for City of New York.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This is an action to recover civil penalties assessed by the United States Coast Guard against the City of New York (the "City") for discharges of oil into the navigable waters of the United States in violation of the Federal Water Pollution Control Act of 1972 ("FWPCA"), 33 U.S.C. § 1321(b)(3). Jurisdiction is premised upon 33 U.S.C. § 1321(n). The City has moved to dismiss the complaint for failure to state a claim. Rule 12(b)(6), Fed.R.Civ.P. The motion is denied.

The allegations of the complaint, deemed true for the purposes of this motion, are as follows. On five separate occasions between July 11, 1975 and July 9, 1976, a discharge of oil into the navigable waters of the United States occurred from a City owned or operated vessel or facility. On each occasion, the District Commander of the Third Coast Guard District assessed a civil penalty against the City pursuant to 33 U.S.C. § 1321(b)(6), which assessment was affirmed, on appeal, by the Commandant of the United States Coast Guard. The aggregate amount of the penalties assessed is $1200.00. The City has not paid the amount due.

The City has moved to dismiss the complaint on two separate grounds: 1. that the City is not an "owner, operator or person" as defined by 33 U.S.C. § 1321(a) and thus cannot be assessed a civil penalty pursuant

**6**

to § 1321(b)(6) and 2. that three of the penalties assessed are invalid because the Coast Guard failed to show fault on the part of the City and the statute does not impose strict liability for oil discharges.

*Liability of Municipal Corporations for Civil Penalties Pursuant to § 1321(b)(6)*

■ The FWPCA, a modification of the 1970 Water Quality Improvement Act ("WQIA"), is "a comprehensive plan attempting to expedite oil pollution cleanup and to establish a workable scheme for limiting and distributing liability." *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1162 (2d Cir. 1978). The broad policy of the Act is that "there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States . . . ," 33 U.S.C. § 1321(b)(1), and "[t]he discharge of oil or hazardous substances . . . into or upon the navigable waters of the United States . . . in harmful quantities as determined by the President . . . is prohibited." *Id.* § 1321(b)(3). Owners or operators of vessels and onshore or offshore facilities are liable for clean-up costs, subject to the defenses of act of God, act of war, negligence of the United States government, or the act or omission of a third party. *Id.* § 1321(f). If the discharged substance is nonremovable, the owner or operator is liable for a civil penalty of varying amount dependent upon the amount and toxicity of the substance spilled and subject to the four defenses enumerated above. *Id.* § 1321(b)(2)(B). Finally, 33 U.S.C. § 1321(b)(6), the provision at issue in this case, makes "any owner, operator, or person" in charge of any onshore facility, offshore facility or vessel from which oil is discharged liable for a civil penalty of up to $5,000, in an amount to be determined by the Coast Guard.

Resolution of the City's first ground for dismissal turns upon an interpretation of the definitional sections of the Act. For the purpose of 33 U.S.C. § 1321, the term "owner or operator"

means (A) in the case of a vessel, any person owning, operating, or chartering by demise, such vessel, and (B) in the case of an onshore facility, and an offshore facility, any person owning or operating such onshore facility or offshore facility, and (C) in the case of any abandoned offshore facility, the person who owned or operated such facility immediately prior to such abandonment.

33 U.S.C. § 1321(a)(6). Moreover, 33 U.S.C. § 1321(a)(7) states that:

"person" includes an individual, firm, corporation, association, and a partnership.

The City contends that § 1321(a)(7)'s failure to enumerate municipalities among the alternative definitions of "person" indicates that Congress intended to exclude municipalities from the scope of the FWPCA.

■ The starting point for questions of statutory interpretation must be the words of the statute itself. *See, e. g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 198–99, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Although § 1321(a)(7) does not specifically include municipalities within its definition of "persons" potentially liable under the Act, it does not specifically exclude such entities either. Indeed,

[t]he word "includes" is usually a term of enlargement, and not of limitation . . . It therefore conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes.

*Argosy Limited v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968), *citing Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941); *United States v. Gertz*, 249 F.2d 662, 666 (9th Cir. 1957).

If municipalities were not included within the statutory definition of "persons", other portions of § 1321 would be rendered superfluous. Operators and owners of vessels which discharge oil and other hazardous substances are subject to the various liabilities and penalties set forth in that section. The statute defines "vessel" to mean

every description of watercraft or other artificial contrivance used, or capable of

being used, as a means of transportation on water *other than a public vessel.* 33 U.S.C. § 1321(a)(3) (emphasis added). The term

"public vessel" means a vessel owned or bareboat-chartered and operated by the United States, or by a State or political subdivision thereof, or by a foreign nation, *except when such vessel is engaged in commerce.*

*Id.* § 1321(a)(4) (emphasis added). Congress, therefore, clearly intended to subject municipally-owned vessels that are engaged in commerce to the penalties set forth in the remainder of § 1321. It would make no sense to exempt municipally-owned vessels that are not used in commerce if the municipalities, themselves, were not "persons" within the meaning of § 1321(a)(7). "Every word used in a statute is presumed to have a meaning, and, if possible, every word must be accorded significance and effect." *Argosy Limited v. Hennigan, supra,* 404 F.2d at 20, *citing General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774 (5th Cir. 1968).

Including municipalities within the statutory definition would also accord with legislative intent. The expressed Congressional policy that there be no discharges of oil is absolute on its face. *See* 33 U.S.C. § 1321(b)(1), quoted *supra.* "There are no qualifications or exemptions suggested in the foregoing statement of policy. Similarly, in defining the terms used in the Act, Congress chose language of sweeping inclusiveness." *United States v. Buntin,* 11 E.R.C. 1061 (M.D.Tenn.1976). The legislative history of the definitional sections of the Act also supports this construction. The House of Representatives' version of the WQIA specifically excluded federal or state-owned facilities from liability for oil discharges. H.Rep.No.91–127, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News, pp. 2691, 2702–03. These exclusions were subsequently deleted by the Joint Conference Committee. Conf. Report No. 91–940, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News pp. 2724–25. Although no specific reason was given for this deletion, it cannot be assumed that it was without significance.

█ The parties have not cited any case which has decided this precise issue, and the court's own research has not found one, but that may be attributable to the fact that the courts have simply assumed the FWPCA to be applicable to municipalities. *See, e. g., City of Pawtucket v. United States,* 10 E.R.C. 2070 (Ct.Cl.1976). In light of the plain meaning and structure of the Act, its legislative history and the avowed Congressional purpose for its enactment, the court finds that assumption well warranted.

### The Liability for Civil Penalties Without Fault

█ The City's second ground for dismissal, that liability may not be imposed for civil penalties pursuant to 33 U.S.C. § 1321(b)(6) without a finding of fault and that the Coast Guard found no negligence on the City's part on three of the occasions alleged in the complaint, is not cognizable on a motion to dismiss pursuant to Rule 12(b)(6). The legal sufficiency of the complaint is the sole matter in issue on such a motion and the complaint does not set forth the Coast Guard's conclusions of law. Although the City has not moved for summary judgment, it has submitted a copy of a decision by the Acting Chief Counsel of the United States Coast Guard in which a "strict liability" standard is applied. Treating the City's second ground for dismissal as a motion for partial summary judgment, the motion is denied.

█ "The civil penalty provision [of 33 U.S.C. § 1321(b)(6)] is clearly one of strict liability . . . and every court which has considered the question has so held." *United States v. Marathon PipeLine Co.,* 12 E.R.C. 1588, 1590 (7th Cir. Dec. 22, 1978), *citing Tug Ocean Prince, Inc. v. United States,* 436 F.Supp. 907, 924 (S.D.N.Y.1977), *aff'd in part & rev'd in part,* 2 Cir., 584 F.2d 1151 (1978); *United States v. Atlantic Richfield Co.,* 429 F.Supp. 830, 836–37 (E.D.Pa. 1977); *Ward v. Coleman,* 423 F.Supp. 1352, 1357 (W.D.Okl.1976); *United States v. Gen-*

*eral Motors Corp.*, 403 F.Supp. 1151, 1157 (D.Conn.1975); *United States v. Eureka Pipeline Co.*, 401 F.Supp. 934, 942 (N.D.W. Va.1975).

*Conclusion*

The City's motion is denied in all respects.

So Ordered.