Carl R. Linn City Attorney City of St. Petersburg
QUESTIONS:
1. Is the City of St. Petersburg authorized by the Community Redevelopment Act to acquire houses in other areas and then move them into a community redevelopment area for rehabilitation and sale?
2. If question one is answered in the affirmative, may the city sell these houses, once rehabilitated, through a bidding procedure which provides for priority classification of bidders based upon such factors as residency, citizenship, age and income level?
SUMMARY:
A municipality is authorized to move houses into a community redevelopment area, rehabilitate such houses, and dispose of them at their fair value for uses in accordance with the redevelopment plan. Procedures for the disposition of rehabilitated houses must be consistent with and further the purpose of the Community Redevelopment Act, part III of ch. 163, F.S., and furnish all citizens of the municipality reasonable notice of the sale and of the priority classification houses.
AS TO QUESTION 1:
The Community Redevelopment Act of 1969 codified as part III of ch. 163, F.S., was enacted by the Legislature to enable counties and municipalities to eliminate and prevent the development or spread of slums and urban blight, to encourage needed community rehabilitation, and to provide for the redevelopment of slum and blighted areas. Your question arises under the Community Redevelopment Act and the authority granted to municipalities therein. This opinion is therefore restricted to the provisions of and the power granted to municipalities by the Redevelopment Act.
The City of St. Petersburg, in its capacity as a Community Redevelopment Agency, has a program whereby it obtains houses that are in the path of proposed construction and moves them into a community redevelopment area. These houses are then rehabilitated and sold through a sealed bid procedure that establishes a priority classification of bidders. This program is part of the approved Community Redevelopment Plan for the affected redevelopment area. All costs of this program are paid from Federal Block Grant Funds. I initially note that the establishment and carrying out of this program and the expenditure of federal funds for such program, assuming that the same are consistent with governing federal laws and regulations, are presumptively valid until such time as the judiciary determines otherwise. This office possesses no authority to pass upon the legality of any particular community redevelopment program but may address the requirements of the Community Redevelopment Act in general.
The Community Redevelopment Act authorizes municipalities to undertake a wide range of activities in order to carry out the purposes of the legislation. In s. 163.335(2), F.S., in setting forth the findings and declarations of necessity for the enactment of the Act, the Legislature stated that `certain slum or blighted areas, or portions thereof, may require acquisition, clearance, and disposition . . . since the prevailing condition of decay may make impracticable the reclamation of the area by conservation or rehabilitation . . . .' Section 163.335(3) provides that the powers conferred by part III of ch. 163 are for public purposes for which public money may be expended and the power of eminent domain and police power exercised.
Subsection (11) of s. 163.340, F.S., defines `[c]ommunity redevelopment plan' as `a plan, as it exists from time to time, for a community redevelopment project.' `Community redevelopment project' is defined by subsection (9) of s. 163.340 F.S., to mean:
 undertakings and activities of a county, municipality, or community redevelopment agency in a community redevelopment area for the elimination and prevention of the development or spread of slums and blight and may include slum clearance and redevelopment in a community redevelopment area, rehabilitation or conservation in a community redevelopment area, or any combination or part thereof in accordance with a community redevelopment plan. (Emphasis supplied.)
The word `include' as used in the context of s. 163.340(9) appears to be a term of enlargement, not of limitation, and conveys the conclusion that there may be other items includable, though not specifically enumerated in the statute. See Argony Limited v. Hennigan, 404 F.2d 14 (5th Cir. 1968).
Although s. 163.345, F.S., requires the municipality to give consideration to the objective of affording maximum opportunity to the rehabilitation or redevelopment of a community redevelopment area by private enterprise to the greatest extent it determines to be feasible in carrying out the provisions of part III of ch. 163, the utilization of private enterprise therefor is not mandated and the performance of the prescribed activities by the municipality is not inhibited. Section 163.350 authorizes a municipality, for the purposes of part III of ch. 163, to formulate a workable program `to eliminate and prevent the development or spread of slums and urban blight, to encourage needed community rehabilitation, to provide for the redevelopment of slum and blighted areas, or to undertake such of the aforesaid activities or other feasible . . . municipal activities as may be suitably employed to achieve the objectives of such workable program.' Section 163.370, F.S., grants the municipality all powers necessary or convenient to effectuate the purposes and provisions of part III of ch. 163, including the authority to undertake and carry out community redevelopment projects and related activities including the disposition of any property acquired in a community redevelopment area at its fair value for uses in accordance with the municipality's community redevelopment plan. See s.163.370(1)(a)4., F.S. Paragraph (a)6. of s. 163.370(1) empowers the municipality to acquire real property which, pursuant to the community redevelopment plan, is to be rehabilitated for dwelling use and resold by the municipality; paragraph (a)7. authorizes it to acquire any other real property in the community redevelopment area when it is necessary to eliminate certain conditions that are injurious to the public's health, safety and welfare or to remove or prevent the spread of blight or deterioration. Paragraph (c)6. authorizes the municipality to enter into any contract necessary to effectuate the purposes of part III of ch. 163. Paragraph (c)2. authorizes the municipality to acquire by purchase, eminent domain or otherwise any real property as defined by s. 163.340(13), F.S.; paragraph (c)3. authorizes it to hold and improve any such property.
Therefore, assuming the city otherwise is authorized to acquire the houses in the pathway of a construction project, the city would appear to possess the authority to move them to and rehabilitate them on property held by the city in a community redevelopment area and dispose of such rehabilitated houses at their fair value for uses in accordance with the city's approved Community Redevelopment Plan.
AS TO QUESTION 2:
Your second question raises the issue of the legality and reasonableness of the city's bidding procedures and of the priority classification of bidders established thereby. This issue raises mixed questions of fact and law as well as constitutional questions which I am without the requisite authority to conclusively determine. The bidding procedures established by the city are, however, presumptively valid and will govern subject program unless determined to be invalid in part or in whole by a court of competent jurisdiction.
Section 163.380(1), F.S., unqualifiedly authorizes the city to sell, lease, dispose of, or otherwise transfer property acquired by it for a community redevelopment project or in a community redevelopment area to any private person and to enter into contracts with respect thereto for residential use in accordance with its approved community redevelopment plan. Subsection (2) of s. 163.380, among other things, provides that such property shall be sold or transferred in accordance with such reasonable competitive bidding procedures as may be prescribed by the municipality. The statute does not dictate what such reasonable bidding procedure shall consist of or establish any minimum requirements therefor. The term `reasonable' is not readily definable and is a relative term difficult of adequate definition. In the absence of any statutory definition of the term or direction for its application, it would seem that any bidding procedure that is consistent with and furthers the purposes of the Community Redevelopment Act, ss. 163.330-163.450, F.S., would be proper. Such bidding procedure should furnish all citizens of the municipality reasonable notice of the sale and of the priority classification of bidders and provide the opportunity to submit bids for subject properties.
Prepared by: Craig Willis, Assistant Attorney General